June 15, 1998

NO. 4-97-0963

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In the Interest of S.A. and P.A., ) Appeal from

Minors, ) Circuit Court of

THE PEOPLE OF THE STATE OF ILLINOIS, ) Champaign County

Petitioner-Appellee, ) No. 95J65

v. ) 

TONY ASHBY, ) Honorable

Respondent-Appellant. ) John R. DeLaMar,

) Judge Presiding.

JUSTICE GREEN delivered the opinion of the court:

On July 26, 1995, the circuit court of Champaign County declared minors, S.A. (born August 9, 1984) and P.A. (born March 13, 1991), neglected (705 ILCS 405/2-3(1)(b) (West 1994)) because they lived in an environment injurious to their welfare in that they were exposed to sexual abuse arising from the sexual abuse of their father, Tony Ashby, in their home upon a minor who was not a member of their family.  On appeal, this court af­firmed.  
In re S.A.
, Nos. 4-95-0684, 4-95-0705 cons. (March 29, 1996) (unpub­lished order under Supreme Court Rule 23).  On March 24, 1997, a supple­mental petition was filed in that court, alleging respon­dent and his wife, Debra, were unfit parents because they failed to make reasonable progress toward the return of the minors and failed to make reasonable efforts to correct the conditions that led to the removal of the minors from the family home.

The March 24, 1997, petition sought to terminate the parental rights of the Ashbys to the two children.  After several hearings, the court entered an order on October 3, 1997, finding 

respondent was an unfit parent and terminating his parental rights to the children because he had failed to make rea­sonable prog­ress toward return of the children and reasonable efforts to correct the conditions of neglect.  The same order determined that Debra, who was not living with respondent, was not proved to be unfit, and the court did not terminate her rights to the chil­dren.  Respondent has appealed.  We affirm.

The rule in this State has been that because of the great importance of parental rights to a child, those rights cannot be properly terminated except upon proof by clear and convincing evidence.  
In re Paul
, 101 Ill. 2d 345, 352, 461 N.E.2d 983, 986 (1984).  Moreover, in 
Santosky v. Kramer
, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), the United States Supreme Court held that because of the impor­tance of the parental relationship, due process requires that relation­ship can only be permanently severed upon clear and convincing evidence.

In contrast to the requirement of clear and convincing proof of parental unfitness upon which parental rights can be terminated, proof leading to a finding of neglect by parents need only be proved by a preponderance or greater weight of the evidence.  
In re C.C.
, 224 Ill. App. 3d 207, 215, 586 N.E.2d 498, 504 (1991); 
In re Prough
, 61 Ill. App. 3d 227, 232, 376 N.E.2d 1078, 1082 (1978).  The major thrust of respondent's argument on appeal is that because the decree of neglect was necessary for the findings that respondent had failed to make reasonable progress toward the return of the children or that he had failed to make reasonable efforts in that respect, the doc­trine of 
Santosky
 requires that neglect must also be proved by clear and convincing evidence.

The theory raised by respondent was rejected by this court in the case of 
In re I.D.
, 205 Ill. App. 3d 543, 563 N.E.2d 1200 (1990), where it was almost a side issue.  A finding of abuse by the father had been made in a proceeding where the standard of proof was the preponderance of the evi­dence.  Later, in a fitness hearing where the standard of proof was clear and convincing evidence, the father's parental rights were terminated for failure to make reasonable efforts to rectify the situation creating the abuse.  There, as here, the argument was made that both the abuse and the finding of unfitness must be proved by clear and convincing evidence.  In an opinion by Justice Lund, this court explained:

"However, respondents misapprehend the nature of the court's termination findings.  The court is not finding respondent father unfit based on that earlier conduct.  Rather, the court's findings were based on new con­duct.  That conduct is the failure of the father to make reasonable efforts and rea­sonable progress toward the return of [the minor] within 12 months after the earlier adjudication.  (Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(m).)  It is to this determina­tion that the clear and convincing standard applies.  The first finding is only relevant as a starting point for the 12 months.  Thus, the proper standard was applied and there can be no argument, based on father's failure to receive the requested counseling, that the determination of the court's [
sic
] finding him unfit is correct."  
I.D.
, 205 Ill. App. 3d at 551, 563 N.E.2d at 1206.

The Supreme Court of Illinois has not passed on the foregoing question directly, but its opinion in 
In re Enis
, 121 Ill. 2d 124, 520 N.E.2d 362 (1988), indicates that court would uphold a determination of parental unfitness termi­nating paren­tal rights even though the neglect, which placed the burden upon the parent to take some rehabilita­tive action, was only proved by a preponderance of the evidence.

In 
Enis
, a child had been found by the circuit court to be an "abused minor" (Ill. Rev. Stat. 1983, ch. 37, par. 702-4) because of bruises inflicted on her by her parents.  The child was placed with the Department of Children and Family Services and the parents were ordered to cooperate.  Later, a supplemental petition was filed, alleging further abuse by the parents.  A hearing was held and the court found the allegations were proved.  At both foregoing proceedings, the preponderance of the evidence standard was applied by the court.  Subsequently, a petition was filed seeking to terminate the parental rights.  At that time, two findings of physical abuse were grounds for declaring the parents unfit.  Ill. Rev. Stat. 1983, ch. 40, pars. 1501(D)(f), (D)(m).  That petition alleged the two findings of physical abuse and the failure to correct the conditions causing the original abuse charge.

In the proceeding to find unfitness, the 
Enis
 trial court took judicial notice of the two findings of physical abuse and further recited that the failure of the parents to remedy the decision had been proved "by a preponderance [of the evidence], because it is uncontradicted."  
Enis
, 121 Ill. 2d at 134, 520 N.E.2d at 367.  The supreme court upheld a reversal and remand­ment by the appellate court.  Following 
Santosky
, the 
Enis
 court held that the two findings of physical abuse by a preponderance of the evidence could not be the basis of a termination of parental rights.  The supreme court then stated:

"Another contention of the People is that, in any event, the evidence introduced at the termination hearing was sufficient for a finding under section 1(D)(m) of the Adop­tion Act that the parents were unfit in that they failed to correct the conditions causing the court to make [the minor] a ward of the court.  Unquestionably, however, the trial court did not use the proper evidentiary standard in making that finding.  In announc­ing its decision the court stated that '[t]he evidence by a preponderance, because it is uncontradicted, is that they [the parents] have not cooperated fully.'  Thus, that find­ing to terminate parental rights also was insufficient because it was made on a preponderance of the evidence standard and not on the required standard of clear and convincing evidence.  Because the trial court judged the evidence by the improper standard of proof, we order a new hearing on the State's petition to be conducted under the constitutionally proper standard, 
i.e.
, clear and convincing evidence.  
Santosky[]
, 455 U.S. [at] 770, 71 L. Ed. 2d [at] 617, 102 S. Ct. [at] 1403; 
In re Urbasek
 (1967), 38 Ill. 2d 535, 543[, 232 N.E.2d 716, 720]."  
Enis
, 121 Ill. 2d at 133-34, 520 N.E.2d at 367.

The foregoing language gives every indication that if, as here, the failure of the parents to alleviate the condition of abuse or neglect had been proved by clear and convincing evi­dence, that would have been sufficient to support the termination of parental rights, even though the original abuse or neglect was only proved by a preponderance of the evidence.  Had the low standard of proof for the original findings of abuse been enough, of itself, to nullify the later determination of failure to change the conditions, the supreme court would likely have so indicated rather than emphasizing the low standard by which the proof of failure to change was made.

Respondent calls our attention to language in 
Santosky
, 455 U.S. at 754, 71 L. Ed. 2d at 607, 102 S. Ct. 
at 1395
, which indicates that in determining the re­quirements of due process in proceedings to terminate parental rights, consider­ation should be given to (1) interests involved, (2) risk of error arising from the proceedings, and (3) govern­mental inter­ests supporting use of the challenged procedure.  This test was derived from 
Mathews v. Eldridge
, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 

903 (1976).

Taking the foregoing interests in inverse order, we consider first the governmental interests supporting the proce­dure used.  The protection of minor children is a high priority interest of government.  A procedure such as that initially used here of permitting intervention and temporary loss of custody when, as here, more likely than not, the children are neglected seems fully consistent with due process.  Leaving children in a situation where, more likely than not, they are in danger merely because the proof does not reach a high degree of certainty is contrary to sensible policy.

Thus, the statutory format gives proper balance to the danger of a wrong decision at the stage where neglect or depen­dency is an issue.  It also gives proper balance to the danger of a wrong decision at the stage where unfitness is an issue.  The parent has much more to lose at this stage because the depriva­tion of parental rights is permanent.  The State policy of protecting the minor has less to lose by a wrong decision at this stage because the State will still have control over the minor and can control the minor's custody.  Thus, the clear and convin­cing standard creates the right balance at this stage.  The interest of the child does have something to lose at this stage because a wrong decision in favor of a parent can put off the time when the child may have the benefit of an adoptive home.

If we assume that proof by a preponderance of the evidence is the proper standard to determine whether the State should intervene to protect a neglected child and if we adopt respondent's theory that proof of neglect must be proved by clear and convincing evidence in order to find the parent unfit for failure to eradicate that dependency, a new hearing on the ques­tion of the original dependency would be required with a differ­ent standard of proof.  This might occur several years after the prior hearing and proof might be lost and memories dulled.  A re-examination of a transcript would not necessarily be adequate because the demeanor and manner of a witness on the stand go to the weight to be given to the testimony of the witness.

Nevertheless, respondent maintains that, under the particular circumstances of this case, the statutory format and procedure used deprive him of both procedural and substantive due process.  He points out that the only act of sexual abuse charged to him was dependent upon the sole testimony of a minor who was impeached.  Respondent also points out that the major reason he was found to have failed to make progress and set forth efforts arose from him being rejected by a remedial program for sex offenders.  He explained this resulted because he refused to admit he had committed a sexually offensive act.  Such admission was apparently the first required step in the program.

Respondent complains he was being dismissed for refus­ing to admit something that would have subjected him to criminal prosecution and a crime that he did not do.  However, a valid deter­mi­na­tion was made that, more likely than not, he did commit the claimed acts.  Moreover, other evidence existed that he failed in his duty to rehabilitate himself.  He lost a job because of excess absenteeism and failed to participate in individual counseling.  During a traffic stop, a crack cocaine pipe was found in the driver's side pocket of his vehicle.  A drug and alcohol evalua­tion indicated respondent had problems in regard to those sub­stances.  Under the circumstances, we conclude respon­dent was not deprived of proce­dural or substantive due process.

Respondent also asserts that the determination he was an unfit parent was contrary to the manifest weight of the evidence.  Although some agencies he worked with gave him good marks, the evidence we have described was sufficient to support a determination of unfitness by clear and convincing evidence.  Respondent also maintains the finding that termi­na­tion of his paren­tal rights was in the best interests of the children was against the mani­fest weight of the evidence.  The foregoing described evi­dence was also sufficient to support that determina­tion.

The judgment of the circuit court is affirmed.

Affirmed.

GARMAN, P.J., and McCULLOUGH, J., concur.