*In re* JAMARQON C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Mitchell C., Respondent-Appellant).—*In re* JAMARQON C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Blanche M., Respondent-Appellant).

Second District    Nos. 2—02—0991, 2—02—1009 cons.

Opinion filed April 7, 2003.

Kathryn Bischoff, of Rockford, for appellant Mitchell C.

Phyllis J. Perko, of Law Offices of Harlovic & Perko, of West Dundee, for appellant Blanche M.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Paul Benjamin Linton, of Northbrook, for the People.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

In this consolidated appeal, the respondents, Mitchell C. and Blanche M., appeal from the August 29, 2002, order of the circuit court of Winnebago County terminating their parental rights to their son, Jamarqon C. On appeal, Mitchell argues that the trial court erred in denying his motion for a continuance prior to the fitness hearing. Blanche argues that section 1(D)(t) of the Adoption Act (750 ILCS 50/1(D)(t) (West 2000)), the statutory provision under which she was adjudicated unfit, is unconstitutional. Alternatively, she argues that the State failed to present clear and convincing evidence that she was unfit. We affirm.

On September 20, 2001, the respondent gave birth to her eighth child, Jamarqon. Jamarqon was born with cocaine in his blood, urine, and meconium. Blanche's previous three children had also been born with cocaine in their systems and had been taken into protective custody after being adjudicated neglected.

On September 26, 2001, the State filed a petition alleging that Jamarqon was neglected pursuant to section 2—3 of the Juvenile Court Act of 1987 (705 ILCS 405/2—3 (West 2000)). Specifically, the petition alleged that Jamarqon was neglected because he was born with cocaine in his urine, blood, or meconium. The petition also alleged that Jamarqon's environment was injurious because Blanche had a substance abuse problem and admitted to using cocaine while she was pregnant. Additionally, the petition alleged that Jamarqon

642

was neglected because his siblings had previously been adjudicated neglected, thereby placing him at risk of harm. Following a shelter care hearing, the trial court placed temporary custody of Jamarqon with DCFS.

■ On March 6, 2002, the State filed a petition, as amended, seeking to terminate the parental rights of Mitchell and Blanche to Jamarqon. The petition alleged that Mitchell was unfit because he was depraved and had failed to maintain a reasonable degree of interest in Jamarqon. See 750 ILCS 50/1(D)(i), (D)(m) (West 2000)). The petition alleged that Blanche was unfit because she had failed to maintain a reasonable degree of interest in Jamarqon. The petition further alleged that she was unfit pursuant to section 1(D)(t) of the Adoption Act (750 ILCS 50/1(D)(t) (West 2000)), which identifies the following condition as a ground for unfitness:

"A finding that at birth the child's blood, urine, or meconium contained any amount of a controlled substance as defined in subsection (f) of Section 102 of the Illinois Controlled Substances Act, or a metabolite of a controlled substance, with the exception of controlled substances or metabolites of such substances, the presence of which in the newborn infant was the result of medical treatment administered to the mother or the newborn infant, and that the biological mother of this child is the biological mother of at least one other child who was adjudicated a neglected minor under subsection (c) of Section 2—3 of the Juvenile Court Act of 1987, after which the biological mother had the opportunity to enroll in and participate in a clinically appropriate substance abuse counseling, treatment, and rehabilitation program." 750 ILCS 50/1(D)(t) (West 2000).

On April 26, 2002, the trial court conducted a pretrial conference on the State's petition. The trial court set August 29, 2002, as the hearing date for the State's petition. The trial court informed both Mitchell and Blanche that they needed to be in court on that date, and if they were not, the hearing would proceed in their absence. Mitchell indicated that he understood this admonishment.

On August 29, 2002, the trial court conducted a hearing on the State's petition. Neither Mitchell nor Julie Hughes, the attorney who had represented him in the earlier proceedings, was present. Attorney Kathleen Hadley, who was standing in for Hughes, requested a continuance. The trial court denied the motion.

The State then presented evidence on its allegations of neglect. The State admitted into evidence Jamarqon's certified medical records from Rockford Memorial Hospital. These records indicated that Jamarqon had been born on September 20, 2001, with cocaine in his blood,

meconium, and urine. Neither the State nor the respondents presented any other evidence as to the allegations of neglect. The trial court then found that the State had established by a preponderance of the evidence that Jamarqon was neglected.

The State next presented evidence as to the respondents' unfitness. The State requested that the trial court take judicial notice of the court files of Blanche's three previous children who had been adjudicated neglected, Samuel H., Bionca H., and Markie C. The State also requested that the trial court take judicial notice of two criminal files of Mitchell's which indicated that he had three prior felony convictions. The State also admitted into evidence Jamarqon's certified medical records, Samuel's certified medical records, and Blanche's records from Rosecrance, a substance abuse treatment facility in Rockford.

Stephanie Tobolski testified that she was the caseworker for two of Blanche's children from January to August 2001. Tobolski testified that as part of the service plan that she developed for Blanche, Blanche was required to receive treatment for her drug addiction. Tobolski met with Blanche and gave her recommendations about obtaining treatment, but Blanche never cooperated. On cross-examination, Tobolski acknowledged that Blanche had obtained a substance abuse assessment at Rosecrance in July or August 2001. Rosecrance recommended treatment for her; however, Blanche never enrolled in substance abuse treatment.

Michelle Garnhart testified that she was Jamarqon's caseworker. Blanche had made only sporadic contacts with her and had not contacted her since the last court hearing in April 2002. Garnhart testified that Mitchell had visited Jamarqon only twice. He had never called or written her or stopped by her office to inquire about Jamarqon's condition. He also never sent any gifts, supplies, clothing, or money for Jamarqon.

Blanche testified on her own behalf. She acknowledged that Tobolski had tried to help her get substance abuse treatment. She had attended Rosecrance and had received an assessment and started classes. However, she did not complete the program. Blanche testified that she had completed a treatment program at the Sojourn House in Freeport. However, she did not recall when she had completed this program.

Following the hearing, the trial court found that the State had proved by clear and convincing evidence that Blanche was unfit pursuant to section 1(D)(t) of the Adoption Act (750 ILCS 50/1(D)(t) (West 2000)). The trial court explained that Blanche had a severe drug addiction problem, that she had attempted treatment, but that she had been unable to cure her addiction. The trial court found that Blanche had given birth to three children between 1997 and 2000. Each of

these children was born cocaine exposed and was subsequently adjudicated neglected. Following the birth of these children, Blanche had numerous opportunities to participate in drug counseling treatment and rehabilitation programs. Nonetheless, Blanche had then given birth to Jamarqon, who tested positive for cocaine.

The trial court additionally found that the State had proved by clear and convincing evidence that Mitchell was unfit pursuant to sections 1(D)(i) and 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(i), (D)(m) (West 2000)). The trial court found that Mitchell was depraved pursuant to section 1(D)(i) of the Adoption Act because he had a felony conviction of attempted murder in 1985, a felony conviction of unlawful delivery of a controlled substance within 1,000 feet of a school in 1993, and a felony conviction of attempted possession of a stolen vehicle in 1999. The trial court also found that Mitchell had failed to maintain a reasonable degree of interest in Jamarqon pursuant to section 1(D)(m) of the Adoption Act because he had only two visits with the child in a year and had never provided any help or assistance with the child.

Following a best interests hearing, the trial court determined that the termination of the respondents' parental rights was in Jamarqon's best interests. The trial court therefore entered an order terminating the respondents' parental rights, and the respondents thereafter filed separate, timely notices of appeal. On December 18, 2002, we granted Blanche's motion to consolidate both appeals for purposes of our review.

In his appeal, Mitchell's sole contention is that the trial court erred in denying his motion for a continuance at the start of the fitness hearing. He contends that the trial court's failure to grant his motion jeopardized his right to a fair trial and his ability to defend against the State's allegations. Because neither he nor his original attorney was at the hearing, Mitchell contends that he suffered substantial prejudice.

■ Illinois recognizes that "serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor." 705 ILCS 405/2—14 (West 2000). There is no absolute right to a continuance. *In re D.P.*, 327 Ill. App. 3d 153, 158 (2001). It is within the trial court's discretion whether to grant or deny a continuance motion, and the court's decision will not be disturbed absent manifest abuse or palpable injustice. *In re K.O.*, 336 Ill. App. 3d 98, 104 (2002). The denial of a request for a continuance is not a ground for reversal unless the complaining party has been prejudiced by such denial. *In re M.R.*, 305 Ill. App. 3d 1083, 1086 (1999).

■ Here, we do not believe that Mitchell has demonstrated that he

was prejudiced by the trial court's denial of his motion for a continuance. Although he asserts that his original counsel would have been better able to represent him had the hearing been continued to a later date, this is mere speculation. Such an argument is also unconvincing in light of the overwhelming evidence that the State presented as to Mitchell's unfitness. The record reveals that Mitchell had been convicted of three prior felonies, one within the last five years. This created a rebuttable presumption that he was depraved and therefore unfit pursuant to section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2000)). The record further reveals that Mitchell had visited his son only twice since his son's birth, had never made any inquiries to his son's caseworker about his son, and never sent his son any letters, gifts, or financial assistance. As such, it is apparent that Mitchell had not demonstrated a reasonable degree of interest in Jamarqon, and the trial court properly found that he was unfit pursuant to section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 2000)). Accordingly, because Mitchell has failed to demonstrate how he or his original counsel could have undermined this overwhelming evidence against him had the case been continued to a later date, we do not believe that the trial court erred in denying his motion for a continuance. See *M.R.*, 305 Ill. App. 3d at 1086.

■ In her appeal, Blanche raises two contentions. Blanche first argues that section 1(D)(t) of the Adoption Act (750 ILCS 50/1(D)(t) (West 2000)) is unconstitutional because it allows one's parental rights to be terminated based on less than clear and convincing evidence. Specifically, Blanche contends that one of the underlying factors for an unfitness finding under this section—the fact that another one of her children had been adjudicated neglected because of being born with drugs in his system—need be established only by a preponderance of the evidence. As such, Blanche argues that this section does not afford her procedural due process and is therefore unconstitutional.

At the outset, we note that Blanche has waived this issue by failing to raise it before the trial court. See *Villareal v. Peebles*, 299 Ill. App. 3d 556, 560 (1998). However, because this issue raises a clear question of law that may be resolved without further input from the trial court, and because the waiver rule is a limitation on the parties and not the court, we will address the merits of Blanche's constitutional claim. See *In re O.R.*, 328 Ill. App. 3d 955, 959 (2002).

■ We note that all statutes are presumed to be constitutional; the party challenging the constitutionality of a statute bears the burden of rebutting this presumption and clearly establishing a constitutional violation. *O.R.*, 328 Ill. App. 3d at 959. Because this issue is one of law, our review is *de novo*. *In re R.C.*, 195 Ill. 2d 291, 296 (2001). We must

construe acts of the legislature so as to affirm their constitutionality and validity if we can reasonably do so. *R.C.*, 195 Ill. 2d at 296-97.

■ In Illinois, because of the great importance of parental rights to a child, those rights cannot be terminated except upon proof by clear and convincing evidence. *In re Paul*, 101 Ill. 2d 345, 352 (1984). Moreover, in *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), the United States Supreme Court held that, because of the importance of the parental relationship, due process requires that this relationship can be permanently severed only upon proof by clear and convincing evidence.

In contrast to the requirement of clear and convincing proof of parental unfitness upon which parental rights can be terminated, a finding of parental neglect need be proved only by a preponderance or greater weight of the evidence. *In re C.C.*, 224 Ill. App. 3d 207, 215 (1991). The major thrust of Blanche's argument on appeal is that, because a prior decree of neglect regarding one of her other children was necessary for the finding that she was unfit under section 1(D)(t), section 1(D)(t) is unconstitutional because it did not necessitate that such a finding be by clear and convincing evidence.

The issue Blanche raises is a matter of first impression in Illinois, as no other court has addressed whether section 1(D)(t) of the Adoption Act violates one's rights to procedural due process. However, Illinois courts have previously considered due process challenges to other sections of the Adoption Act that set forth the grounds for the finding of parental unfitness. See *In re Enis*, 121 Ill. 2d 124 (1988) (addressing the constitutionality of section 1(D)(f) (Ill. Rev Stat. 1983, ch. 40, par. 1501(D)(f))); *In re S.A.*, 296 Ill. App. 3d 1029 (1998) (addressing whether section 1(D)(m) (750 ILCS 50/1(D)(m) (West 1998)) violated due process).

In making her argument, Blanche relies on *In re Enis*, 121 Ill. 2d 124 (1988), in which the supreme court held that a provision of the Adoption Act was unconstitutional because it allowed the termination of parental rights based only on a preponderance of the evidence. In *Enis*, the child was removed from her parents' custody after being adjudicated an abused minor due to various injuries she had received while in her parents' custody. *Enis*, 121 Ill. 2d at 126. Shortly after the child was returned to her parents' custody, the State filed another petition, alleging new incidents of physical abuse. *Enis*, 121 Ill. 2d at 126. The trial court granted the petition and again placed the child in protective custody. *Enis*, 121 Ill. 2d at 126-27. The State thereafter filed a petition to terminate the parents' parental rights pursuant to sections 1(D)(f) and 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1983, ch. 40, pars. 1501(D)(f), (D)(m)). *Enis*, 121 Ill. 2d at 127. Section

1(D)(f) provided that a person was unfit based on two prior findings of physical child abuse; section 1(D)(m) provided that the parents were unfit for failure to correct the conditions that were the basis for the removal of the minor from them. *Enis*, 121 Ill. 2d at 127. The trial court found that the State had established both of these provisions by a preponderance of the evidence and terminated the parents' parental rights. *Enis*, 121 Ill. 2d at 127-28.

On appeal, this court found that section 1(D)(f) was unconstitutional, and the supreme court affirmed. *Enis*, 121 Ill. 2d at 128, 134. The supreme court explained that an adjudication of abuse under the Juvenile Court Act was by a preponderance of the evidence. *Enis*, 121 Ill. 2d at 131-32. Section 1(D)(f) provided that two findings of physical abuse (which had been established by a preponderance of the evidence) were grounds for a finding of unfitness. *Enis*, 121 Ill. 2d at 133. The supreme court noted that there was nothing in section 1(D)(f) that suggested that the court review additional evidence to determine if the allegations of abuse were proved by clear and convincing evidence. *Enis*, 121 Ill. 2d at 133. As such, the supreme court held that section 1(D)(f) did not satisfy the requirements of due process because it authorized the termination of parental rights upon proof of physical abuse by a preponderance of the evidence. *Enis*, 121 Ill. 2d at 133.

Here, Blanche argues that the statute at issue, section 1(D)(t), is analogous to the statute at issue in *Enis*, section 1(D)(f), because it allows a finding of unfitness to be premised on a prior neglect adjudication rendered pursuant to the Juvenile Court Act. That earlier neglect adjudication, which was obtainable by proof meeting the mere standard of a preponderance of the evidence, is then used to secure a finding of unfitness, in violation of due process.

The State responds that *Enis* is distinguishable because, under section 1(D)(t), the earlier finding of neglect—which was established by a preponderance of the evidence—is not an independent basis for a finding of unfitness under the Act. Rather, the State contends that the prior neglect finding requires the respondent to take steps to address her substance abuse. If the State is able to show by clear and convincing evidence that she has been given the opportunity for substance abuse treatment, yet gives birth to another child with drugs in his system, the State contends that the respondent's parental rights then may be properly terminated.

In support of its argument, the State relies on *In re S.A.*, 296 Ill. App. 3d 1029 (1998). In *S.A.*, the minors were adjudicated neglected based upon a finding that their father had exposed them to sexual abuse. *S.A.*, 296 Ill. App. 3d at 1030. The father's parental rights were eventually terminated based on his failure to make reasonable progress

towards the return of the children and reasonable efforts to correct the conditions of neglect. *S.A.*, 296 Ill. App. 3d at 1031. On appeal, the father argued that, because the decree of neglect was necessary for the trial court to determine that he had failed to make reasonable efforts to correct the conditions of neglect and thereby terminate his parental rights, the finding of neglect must also be established by clear and convincing evidence. *S.A.*, 296 Ill. App. 3d at 1031. The reviewing court rejected this argument on three grounds. *S.A.*, 296 Ill. App. 3d at 1031-35. First, the court noted that, in previously considering the issue, it had determined that one's parental rights were not terminated under section 1(D)(m) because of earlier conduct (the basis for the neglect petition) but rather new conduct (failure to correct conditions). *S.A.*, 296 Ill. App. 3d at 1032, citing *In re I.D.*, 205 Ill. App. 3d 543, 551 (1990), *rev'd on other grounds*, *In re R.C.*, 195 Ill. 2d 291, 304 (2001). Only to this new conduct did the clear and convincing evidence standard apply. *S.A.*, 296 Ill. App. 3d at 1032. Second, the court found that in *Enis* the supreme court indicated that it would uphold a determination of parental unfitness for failure to correct conditions of neglect even though the original finding of neglect was established only by a preponderance of the evidence. *S.A.*, 296 Ill. App. 3d at 1033. The court noted that in *Enis*, as to the issue of whether the parents were unfit pursuant to section 1(D)(m), the court reversed because the trial court did not apply the right standard of proof. *S.A.*, 296 Ill. App. 3d at 1033. The *S.A.* court determined that if the supreme court had found that the lower burden of proof for the original neglect finding was problematic, the court would have commented on it. *S.A.*, 296 Ill. App. 3d at 1033. Third, the *S.A.* court found that requiring the original neglect finding to be proved again at a later hearing would not work well in practice. *S.A.*, 296 Ill. App. 3d at 1034. The court explained that the later termination hearing might occur several years after the prior neglect hearing and proof might be lost and memories dulled. *S.A.*, 296 Ill. App. 3d at 1034. Based on all these reasons, the court found that section 1(D)(m) did not deprive the father of his due process rights. *S.A.*, 296 Ill. App. 3d at 1035.

■ We believe that section 1(D)(t) is more analogous to section 1(D)(m), as analyzed in *S.A.*, than section 1(D)(f), as analyzed in *Enis*. We agree with the State's argument that under section 1(D)(t) the fact that the respondent gave birth to a child who had drugs in his body and was subsequently adjudicated neglected because of that marks the starting point of determining if the respondent was unfit. The State must still show by clear and convincing evidence that she was given the opportunity to get drug treatment yet still subsequently gave birth to another child who tested positive for drugs. Unlike the situation in

*Enis,* under section 1(D)(t), a person cannot have her parental rights terminated based solely on a finding of neglect or abuse that was established only by a preponderance of the evidence. We therefore conclude that section 1(D)(t) does not violate one's constitutional rights to procedural due process.

■ In the alternative, Blanche argues that the trial court's order finding her unfit was against the manifest weight of the evidence. As noted earlier, because of the great importance of parental rights to a child, those rights cannot be terminated except upon proof by clear and convincing evidence. *In re Paul,* 101 Ill. 2d 345, 352 (1984). The Juvenile Court Act provides a two-stage mechanism whereby parental rights may be involuntarily terminated. 705 ILCS 405/2—29(2) (West 2000). Under this bifurcated procedure there must be a threshold showing of parental unfitness based upon clear and convincing evidence and then a subsequent showing that the best interests of the child are served by severing parental rights. *In re Adoption of Syck,* 138 Ill. 2d 255, 277 (1990); *In re M.J.,* 314 Ill. App. 3d 649, 655 (2000).

A trial court's determination of parental unfitness involves factual findings and credibility assessments that the trial court is in the best position to make. *In re A.B.,* 308 Ill. App. 3d 227, 240 (1999). We therefore defer to the trial court's factual findings, and we will not reverse the trial court unless the record shows that the factual findings are against the manifest weight of the evidence. *A.B.,* 308 Ill. App. 3d at 240. A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, and not based on the evidence presented. *Brazas v. Ramsey,* 291 Ill. App. 3d 104, 109 (1997).

■ Parental unfitness is determined with reference to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2000)). 705 ILCS 405/2—29(2) (West 2000). It is well recognized that a parent's right to control the upbringing of his or her children is a fundamental right. *In re R.C.,* 195 Ill. 2d 291, 303 (2001). Therefore, before a trial court can adjudicate a parent unfit and terminate his or her parental rights, the State must prove by clear and convincing evidence at least one statutory ground of parental unfitness. *M.J.,* 314 Ill. App. 3d at 655.

Pursuant to section 1(D)(t) of the Adoption Act, in order for the State to establish that a parent is unfit, it must show that (1) she has previously had a child who was adjudicated neglected because he was born with drugs in his blood, urine, or meconium; (2) she had the opportunity to enroll and participate in a clinically appropriate substance abuse counseling, treatment and rehabilitation program; and (3) her child at issue in the petition was born with drugs in his blood, urine, or meconium. 750 ILCS 50/1(D)(t) (West 2000).

█ In the case herein, we believe that the trial court's finding that Blanche was unfit was not against the manifest weight of the evidence. The State presented evidence that three of Blanche's children had been adjudicated neglected between 1997 and 2000. The State introduced into evidence her son Samuel's certified medical records, which indicated that he had been born exposed to cocaine. The trial court took judicial notice of Samuel's court file, which indicated that he had been adjudicated neglected. The State also introduced into evidence medical records from Rosecrance that indicated that Blanche had enrolled and participated in drug treatment and rehabilitation programs at various times between July 2000 and June 2001. These records indicated that the doctors at Rosecrance had created a master treatment program for Blanche to treat her problems associated with her addiction. This treatment plan required Blanche to acknowledge that she was chemically dependent and to accept responsibility for her illness; to participate in group and individual therapy; and to participate in activities that would prevent a relapse. As to the fact that the child at issue in the petition, Jamarqon, had been born with cocaine in his blood, urine, or meconium, the State introduced into evidence his certified medical records. These records indicated that he had been born cocaine exposed. Based on this evidence, we determine that the trial court's finding that Blanche was unfit pursuant to section 1(D)(t) of the Adoption Act was not against the manifest weight of the evidence.

In so ruling, we find without merit Blanche's contention that the State's evidence as to her unfitness was insufficient. Blanche argues that, in order to meet its burden of proof that one of her other children and Jamarqon were born with cocaine in their bodies, the State was required to present more than just their certified medical records. Blanche contends that such evidence was only hearsay and did not conclusively establish that the children were born with cocaine in their bodies that was not the result of nonmedical procedures. We disagree.

Section 2—18(4)(a) of the Juvenile Court Act provides that hospital or agency records made as to occurrences or events relating to a minor in a neglect proceeding shall be admissible into evidence as proof of those occurrences or events if the document was made in the regular course of the hospital's or agency's business. 705 ILCS 405/2—18(4)(a) (West 2000). Evidence admitted pursuant to section 2—18(4)(a) is sufficient to establish at least one ground of parental unfitness by clear and convincing evidence. See *In re A.B.*, 308 Ill. App. 3d 227, 237 (1999) (determining that client service plans admitted pursuant to section 2—18(4)(a), without the aid of supporting

testimony, are sufficient to establish at least one ground of parental unfitness by clear and convincing evidence).

Here, Samuel's and Jamarqon's certified medical records were admitted into evidence pursuant to section 2—18(4)(a) of the Juvenile Court Act (705 ILCS 405/2—18(4)(a) (West 2000). Despite Blanche's protests to the contrary, we believe that these records conclusively established that Samuel and Jamarqon were born with cocaine in their blood, urine, or meconium. Moreover, even though these records were hearsay, they were sufficient for the State to meet its burden of showing by clear and convincing evidence that Blanche was unfit. See *A.B.*, 308 Ill. App. 3d at 237. Therefore, the trial court's finding that Samuel and Jamarqon had been born with cocaine in their blood, urine, or meconium was not against the manifest weight of the evidence.

We also reject Blanche's argument that the State failed to establish that she had the opportunity to enroll and participate in a "clinically appropriate" treatment or rehabilitation program following her son Samuel's adjudication of neglect. Although she acknowledges that the State admitted into evidence her records from Rosecrance as to her enrollment and participation in a treatment program for her drug addiction, Blanche argues that these records are devoid of any evidence that the treatment program was "clinically appropriate" for her.

We agree with Blanche's assertion that her records from Rosecrance are devoid of any specific language indicating that the treatment plan recommended for her drug addiction was "clinically appropriate." Nonetheless, we find that, in reviewing her records from Rosecrance in their entirety, it is apparent that Blanche had the opportunity to participate in "clinically appropriate" treatment for her addiction. "Clinical" is defined as "concerned with or based on actual observation and treatment of disease in patients rather than artificial experimentation or theory." Webster's Unabridged Dictionary 277 (1989). A determination that a program is "clinically appropriate" requires the exercise of professional judgment. See *C.J. v. Department of Human Services*, 331 Ill. App. 3d 871, 889 (2002).

Here, Blanche's records from Rosecrance reveal that two doctors, after personally observing her, developed a treatment plan for her drug addiction. This treatment plan required her to acknowledge that she had an illness, to participate in therapy, and to participate in other social activities to prevent a drug relapse. As this treatment plan was developed following the doctors' actual observations of Blanche, we believe the treatment plan the doctors created for her was "clinically appropriate." We therefore conclude that the State presented clear and convincing evidence that Blanche was given the opportunity to

participate in "clinically appropriate" treatment after the birth of her cocaine-exposed son Samuel. Thus, the trial court's finding that she was unfit on this basis was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Winnebago County terminating Mitchell's and Blanche's parental rights to Jamarqon is affirmed.

Affirmed.

CALLUM and KAPALA, JJ., concur.