*In re* M.S. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. R.S., Respondent-Appellant).

First District (5th Division)   No. 1—03—1009

Opinion filed August 6, 2004.

Bruce H. Bornstein, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Nancy Grauer Kisicki and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Christopher Williams, of counsel), guardian *ad litem*.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a hearing, the circuit court of Cook County found that respondent, R.S., was an unfit parent and terminated her parental rights to her minor twin sons, M.S. and Z.S.[1] Upon appeal, respondent contends the court erred in finding her unfit because she completed or was engaged in all of the services that were offered to her that were required for reunification with her children. Respondent also claims the State failed to show that it was in the minors' best interests to terminate her parental rights. We affirm.

On January 25, 2001, the State filed a petition for adjudication of wardship of the minor twins, born January 18, 2001. The petition alleged the minors were neglected because they were born with some amount of a controlled substance in their blood, urine or meconium. The petition also alleged that their environment was injurious based upon the fact respondent had three other children who were previously found neglected and were in the custody of the Department of Children and Family Services (DCFS), and two others who were not in her care or custody. The circuit court found that probable cause existed because the minor twins tested positive for marijuana and opiates at birth and granted DCFS temporary custody of them with the right to place.

At a July 2001 adjudicatory hearing, the circuit court found that the minors were abused and neglected based upon an injurious environment, a substantial risk of physical injury, and the fact that they were drug-exposed infants. On February 22, 2002, the court entered dispositional orders finding respondent unable to care for the minors, adjudged the minors wards of the court, and placed them in the guardianship of DCFS.

On May 20, 2002, the circuit court entered a permanency goal to return the minors home pending a status hearing because respondent stated a willingness to complete the services required for reunification with her sons. On June 10, 2002, however, the goal was changed to substitute care pending court determination on termination of parental rights because respondent had five positive drug tests and still had not addressed her drug problem.

---

[1] The circuit court also found the minors' father unfit and terminated his parental rights; he is not a party to this appeal.

In September 2002, the State filed a supplemental petition to terminate respondent's parental rights alleging that respondent was unfit because she failed to maintain a reasonable degree of interest, concern or responsibility to the minors' welfare (750 ILCS 50/1(D)(b) (West 2002)), she was addicted to drugs for at least one year immediately preceding the fitness proceedings (750 ILCS 50/1(D)(k) (West 2002)), she failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors, and she failed to make reasonable progress toward their return home within nine months after the adjudication of neglect or abuse (750 ILCS 50/1(D)(m) (West 2002)). The State subsequently amended the petition to include the allegation that respondent had previously given birth to another child who was adjudicated neglected due to the child being born drug exposed, after which respondent had an opportunity to participate in drug counseling, and she subsequently bore another child who tested positive for controlled substances at birth (750 ILCS 50/1(D)(t) (West 2002)).

At the fitness hearing, the circuit court admitted, without objection, the State's certified copies of adjudication and dispositional hearing orders showing that the minors' older sister, B.S., was previously found neglected because she was born exposed to drugs. These orders do not appear in the record upon appeal.[2] The State also admitted, without objection, the certified medical records from the twins' births which indicated that the urine of respondent and both minors tested positive for marijuana and opiates. In addition, the State admitted, without objection, certified toxicology reports indicating that respondent tested positive for a controlled substance six times from February through April 2002.

DCFS caseworker Jacqueline Butler testified that she was assigned to the family's case from 1997 to 2000 prior to the twins' birth and charged with providing respondent with services to reunite her with her other children. Butler consistently rated respondent as unsatisfactory because, although she completed a parenting class, respondent failed to complete her other required services, including a drug treatment program and counseling, and she did not attend a drug treatment assessment.

Butler stated that an assessment was necessary because respondent's daughter, B.S., was born with cocaine in her system. Butler informed respondent of scheduled appointments for the assessment and gave her bus tokens for transportation, but respondent did not

---

[2]Respondent does not dispute their existence or authenticity in this appeal.

appear. Instead, respondent denied that she had a drug problem and told Butler that she smoked only marijuana and that she previously completed drug treatment with another agency; she never provided documentation to support her claim.

If respondent had undergone the drug assessment, Butler would have given her the proper referrals for treatment. All of the service plans completed by Butler stated that respondent was to engage in drug treatment, and respondent was given copies of each plan. In addition, respondent's therapist told Butler that respondent was not attending counseling consistently and was not making progress.

Rosalyn Shelton, a caseworker with Lutheran Child and Family Services (LCFS), testified that the minor twins' case came into the system because they tested positive for drugs at birth. Shelton was assigned to the case in August 2001. Due to the minors' positive drug indication, respondent was required to complete drug tests and drug rehabilitation, as well as a psychiatric evaluation and parenting classes. Shelton rated respondent's participation in the required services as unsatisfactory because, although she completed the psychological evaluation, respondent failed to complete drug rehabilitation and parenting classes. Shelton knew that respondent had completed a parenting class two years before the twins were born, but she was required to retake the classes because it was apparent that she had not retained what she had learned. Shelton referred respondent to several parenting classes, but respondent never attended.

During visits, Shelton observed that respondent handled the minors abruptly, appeared frustrated, and could not calm them when they cried. In addition, Shelton testified that if respondent had completed a drug treatment program prior to the twins' birth, she would have been required to complete another one because it was obvious that she still had a drug problem. Shelton referred respondent to the Bobby Wright Center for drug rehabilitation. During a February 2002 conversation, respondent told Shelton that she was using marijuana and that she began using drugs when she was a teenager. Shelton testified that on numerous occasions, respondent told her that she did not need any services because she had previously completed them, including treatment at the Bobby Wright Center. Shelton spoke with a counselor at the Wright Center and learned that respondent had not completed the program.

LCFS caseworker Mary Reilly testified that she was assigned to the minors' case at the end of May 2002. In August of the same year, she rated respondent's completion of services from February through August 2002 as unsatisfactory because respondent had not yet

completed a drug rehabilitation program, failed to attend the required Narcotics Anonymous-Alcoholics Anonymous (NA-AA) meetings, and tested positive for a controlled substance several times from February through April 2002. Respondent enrolled in an inpatient drug program on July 1, 2002, and completed the program on September 5, 2002.

Reilly testified that in May 2002, the permanency goal was to return the children to their home; however, in June 2002, the goal was changed to substitute care pending termination of parental rights because respondent tested positive for a controlled substance six times in the preceding months and had not completed her required services. Although respondent completed the psychological evaluation on May 24, 2002, and anger management classes, she did not begin inpatient drug treatment until July 2002, after the goal was changed, and she had not completed parenting classes or aftercare for her drug treatment. For aftercare, respondent was supposed to attend 90 NA-AA meetings in 90 days beginning in September 2002, but she never provided Reilly with any documentation that she completed that requirement.

Reilly testified that the most important service respondent had to complete was drug treatment. This was so because respondent could not effectively parent her children when she was under the influence of drugs. She further testified that if respondent had completed her inpatient drug treatment by the June 2002 court date, Reilly would have kept the permanency goal as returning the children to their home. However, if respondent had only partially completed the program, there would have been no guarantee that she would successfully complete the program and the goal would have been changed to substitute care.

Respondent testified that from 1997 through March 2003 she completed drug rehabilitation, parenting classes, and anger management classes, and she was still attending NA-AA meetings. She acknowledged that she did not complete all of the required services, but said she completed some of them. She also testified that she completed all of the services that Reilly asked her to do. Respondent said that she gave Reilly documentation that she completed the 90-meeting requirement on July 10, 2002. She later testified that she gave Reilly slips that she attended some of the meetings, not all of them, and that she was not told about the requirement until September 5, 2002.

Respondent further testified that she completed the services because she was trying to change and start a new drug-free life, and she wanted her children returned to her. She said that she had a very good relationship with the minors, who called her "mom," and during visits she fed them and brought them things.

The circuit court found that the State proved by clear and convincing evidence that respondent was an unfit parent based upon three of the alleged grounds. Under section 1(D)(t) of the Adoption Act (750 ILCS 50/1(D)(t) (West 2002)), the court found that the medical records coupled with Butler's testimony proved that respondent gave birth to a drug-exposed infant, B.S., was given an opportunity to participate in drug counseling and treatment, and thereafter gave birth to the minor twins, who were both born exposed to drugs. Under section 1(D)(b) (750 ILCS 50/1(D)(b) (West 2002)), the court found that respondent failed to maintain a reasonable degree of responsibility towards her children because she did not engage in drug rehabilitation in a timely manner. Under section 1(D)(m) (750 ILCS 50/1(D)(m) (West 2002)), the court found that respondent failed to make reasonable progress toward the minors' return home within nine months after the July 10, 2001, adjudication, and also during a second nine-month period from April 10, 2002, to January 10, 2003. In addition, the court found that respondent's testimony was not credible based upon her demeanor while testifying and changes in her testimony.

At the best-interests hearing, Reilly testified that the minors were placed in their present specialized foster placement after being released from the hospital following their births. The foster home was always spotlessly clean, safe and appropriate with no signs of abuse or neglect. The foster mother had the minors attending library reading sessions and craft classes at the park district, and she enrolled the boys in other available classes. While the foster parents were at work, the minors received in-home day care.

Reilly testified that the minors bonded with their foster father and were extremely well-bonded with their foster mother, whom they called "momma." The minors were also integrated and involved in the foster parents' extended family, especially with the maternal foster grandmother, who provided alternative day-care for them as needed.

Both of the minors completed physical therapy and were involved in ongoing occupational, developmental and speech therapies. The foster mother received special training to assist the minors with their therapies, and she personally purchased a small trampoline to assist them with their exercises. Z.S. also has respiratory problems that require breathing treatments.

Reilly further testified that the minors never lived with respondent, and all of her visits with them were supervised by LCFS. Respondent visited the minors regularly, brought them food and gifts, and they were happy to see her. Reilly acknowledged that LCFS never offered to provide respondent with training for the minors' special needs, but explained that she could not offer respondent reunification

services because the permanency goal was not to return the children home. Based upon the bonding between the minors and the foster parents, the foster parents' level of commitment, and the minors' special needs, Reilly recommended that respondent's parental rights be terminated and that the foster parents be allowed to adopt the minors.

The foster mother, E.W., testified that she has been the minors' foster parent since January 26, 2001. She has a very strong bond with the minors, who were integrated into the foster parents' family, and the twins call her "momma" and her husband "dada." A day-care worker comes to their house four days a week, and E.W.'s mother also cares for the minors occasionally and has a very strong bond with them.

The minors receive physical, occupational, developmental, and speech and language therapies because they were over 30% delayed in all four areas. In addition, Z.S. has asthma and receives a nebulizer treatment once a day; M.S. has also begun to show asthmatic symptoms. Four therapists come to the home once a week for one-hour sessions. E.W. participates in the sessions as much as possible and is learning the therapists' techniques so she can continue with them in the future.

E.W. also takes the minors to a children's gym and plans to take them to the park in warmer weather. They also attend park district classes where the minors engage in physical activity and crafts and have social contact with other children. The minors also attend a music class for children under the age of five. E.W. testified that she and her husband will adopt the children if they become eligible for adoption and that has always been their intention.

Respondent testified that if someone showed her how to perform the therapeutic techniques for the minors, she would be able to do them, but no one ever offered to train her. She visited the minors regularly, and the visits have gone well. The minors know her as their mother, and she fed them, played with them, read to them, and taught them to say "dada" and "momma." At their last visit, the minors waved and smiled at respondent and called her "momma." Respondent testified that she is capable of caring for the minors, that she presently rents a two-bedroom apartment, and that she has been employed as a housekeeper since January 2000. She testified that she could provide the minors with a good life and that it would be in their best interests to live with her. She further stated that she is going through a lot of pain and that she deserves to have the minors returned to her because she has made many changes.

The circuit court considered the best interest factors listed in the

Juvenile Court Act of 1987 (705 ILCS 405/1—3(4.05) (West 2002)) and found that the minors have been in a very stable placement with the foster parents since days after their birth, and it is the only home they have known. The court found that the foster mother demonstrated considerable commitment to the minors by regularly following through with all of the therapeutic recommendations, and the foster parents addressed the minors' special needs. The court concluded that it was in the minors' best interests to terminate respondent's parental rights, involuntarily terminated those rights, appointed a guardian to consent to adoption, and set a permanency goal of adoption.

■ The involuntary termination of parental rights is a two-step process governed by the Juvenile Court Act of 1987 (705 ILCS 405/1 *et seq.* (West 2002)). *In re D.F.*, 201 Ill. 2d 476, 494 (2002). First, the State must prove by clear and convincing evidence that the parent is "unfit" as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2002)). *D.F.*, 201 Ill. 2d at 494-95. Second, if the parent is found unfit, the circuit court must determine if terminating the parental rights would be in the child's best interests. *D.F.*, 201 Ill. 2d at 495.

■ Here, respondent contends that the circuit court erred in finding her unfit because she completed or was engaged in all of the services that were offered to her and required for reunification with the minors. Respondent argues that the evidence failed to prove that she was an unfit parent under the three stated grounds. She further contends that she was not given a full and fair opportunity to work towards reunification with the minors and that there was a rush to terminate her parental rights. Respondent also argues that LCFS' failure to train her to care for the minors' special needs shows that the agency had no intention of reuniting her with her children.

We find no merit in respondent's argument. The circuit court's finding of parental unfitness will be reversed only if it is against the manifest weight of the evidence. *In re C.W.*, 199 Ill. 2d 198, 211 (2002). A decision is against the manifest weight of the evidence where the facts indicate that the circuit court should have reached the opposite conclusion. *In re D.D.*, 196 Ill. 2d 405, 417 (2001).

Respondent contends that the evidence was insufficient for the court to find her unfit under section 1(D)(t) because the State failed to prove that the drug treatment offered to her prior to the minors' birth was clinically appropriate. She argues that the State was required to have a doctor or other professional testify that the services offered to her were clinically appropriate.

To prove respondent unfit under section 1(D)(t), the State was required to show that: (1) respondent previously gave birth to a child

who was adjudicated neglected because she was born with drugs in her system; (2) respondent had an opportunity to enroll and participate in a clinically appropriate substance abuse counseling, treatment and rehabilitation program; and (3) the minors at issue in the instant petition were born with drugs in their blood, urine or meconium. 750 ILCS 50/1(D)(t) (West 2002); *In re Jamarqon C.*, 338 Ill. App. 3d 639, 649 (2003).

Here, we find that the State presented clear and convincing evidence that respondent was unfit pursuant to section 1(D)(t). First, without objection, the State produced certified copies of the adjudication and dispositional orders[3] showing that the minors' older sister, B.S., was previously found neglected by respondent because she was born exposed to drugs. This evidence was sufficient to establish the first element of section 1(D)(t).

Second, Butler testified that, due to B.S. being born with cocaine in her system, respondent was required to undergo a drug treatment assessment so that Butler could refer respondent to an appropriate drug treatment program and counseling. Butler informed respondent of scheduled appointments for her assessment and gave her bus tokens for transportation; however, respondent never appeared for the assessment. Instead, respondent denied that she had a drug problem and told Butler that she smoked only marijuana and that she previously completed a drug treatment program with another agency.

As noted in the State's brief, respondent cites no support for her claim that the State was required to have a doctor or other professional testify that the treatment offered to her was clinically appropriate. In fact, Butler was unable to offer respondent a specific treatment program because she refused to undergo the assessment. Butler testified that if respondent had undergone the assessment, she would have referred respondent to a proper drug treatment program. We find that Butler's testimony sufficiently established that following B.S.' birth, respondent was given an opportunity to enroll and participate in a clinically appropriate substance abuse program; however, respondent elected not to pursue that opportunity. Moreover, we find it significant that respondent denied that she had a drug problem and attempted to minimize her drug use by stating that she smoked only marijuana. Thus, we find that the evidence was sufficient to establish the second element of section 1(D)(t).

---

[3]The adjudication and dispositional orders for B.S. do not appear in the record on appeal. It was appellant's burden to present a sufficient record on appeal, and any doubts arising from an omission in the record must be resolved against her. *In re Kenneth F.*, 332 Ill. App. 3d 674, 678 (2002).

Finally, the State admitted, without objection, the certified medical records from the twins' birth which indicated that the urine of respondent and both minors tested positive for marijuana and opiates. This evidence established the final element of section 1(D)(t). Based upon the above evidence, the circuit court's finding that respondent was unfit under section 1(D)(t) was not against the manifest weight of the evidence.

When parental rights are terminated based upon clear and convincing evidence of a single ground of unfitness, the reviewing court need not consider whether the respondent was also unfit based upon additional grounds cited by the circuit court. *D.D.*, 196 Ill. 2d at 422. Therefore, this court need not consider whether respondent was also unfit based upon the circuit court's findings that she failed to maintain a reasonable degree of responsibility towards her children and that she failed to make reasonable progress toward reunification with her sons.

■ Respondent next contends the State failed to show that it was in the minors' best interests to terminate her parental rights. She argues that she has turned her life around, is employed, and has not recently used drugs. She also argues that she visited the minors consistently, they were happy to see her, and they know her as their mother. Both the State and the public guardian, representing the minors as their guardian *ad litem*, argue that it was in the minors' best interests to terminate respondent's parental rights.

The circuit court's determination of the minors' best interests will not be overturned upon review unless it is against the manifest weight of the evidence. *In re Sheltanya S.*, 309 Ill. App. 3d 941, 955 (1999). *Cf. In re Dominique W.*, 347 Ill. App. 3d 557, 569 (2004) (citing cases that show a split of authority regarding the appropriate standard of review). In determining the minors' best interests, the circuit court must consider several factors in the context of the minors' age and developmental needs, including, *inter alia*, the minors' physical safety and welfare; their familial and cultural background and ties; their sense of attachments, such as where they feel loved and secure; their need for permanence and stability; and their caretakers' preference. 705 ILCS 405/1—3(4.05) (West 2002).

Here, the evidence showed that the minors were placed in specialized care in the foster parents' home a few days after they were released from the hospital following their births, and this is the only home they have ever known. The foster home was found to be a safe and appropriate place for the minors, with no signs of abuse or neglect, and they have bonded well with their foster parents and the extended family. The foster mother enrolled the boys in several classes at the

park district and library, she has been thoroughly dedicated to ensuring they receive all of their various therapies, and she has also tended to all of their special needs. The record further shows that respondent never had custody of the minors, and although she visited them regularly, all of her visits were supervised by agency personnel. Moreover, the foster parents expressed an interest in adopting the minors, and the foster mother testified that adopting the twins was always their intention. Based upon this evidence, we find the circuit court's determination that it was in the minors' best interests to terminate respondent's parental rights and make the minors available for adoption was not against the manifest weight of the evidence.

For these reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAMPBELL, P.J., and REID, J., concur.