# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re A.F.*, 2012 IL App (2d) 111079

---

| | |
|---|---|
| Appellate Court Caption | *In re* A.F., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Anthony F., Respondent-Appellant (Crista E., Respondent)). |
| District & No. | Second District<br>Docket No. 2-11-1079 |
| Filed | May 7, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Order terminating respondent father's parental rights was affirmed where there was no conflict of interest on the part of respondent's counsel arising from the fact that another attorney from the same division of the public defender's office had represented the child's mother in the same proceedings, the trial court did not abuse its discretion in denying respondent's request for a continuance, and the trial court's findings that respondent was unfit and that the termination of his parental rights was in the child's best interest were not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-JA-34; the Hon. Mary Linn Green, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Nicholas O. Meyer, of Meyer & Horning, P.C., of Rockford, for appellant. |
| | |
| | Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. |
| | Justice Bowman concurred in the judgment and opinion. |
| | Presiding Justice Jorgensen dissented, with opinion. |

## OPINION

¶ 1    In 2009, the State filed a neglect petition against respondents, Anthony F. and Crista E., alleging that A.F. (the minor) was neglected. During the proceedings, both respondent and Crista E. were represented by different attorneys from the same conflicts division of the public defender's office. The trial court found the minor neglected and adjudicated her a ward of the court and placed her in the guardianship of the Department of Children and Family Services (the Department). Thereafter, the trial court found respondent unfit and terminated his parental rights. Respondent now appeals, contending that: (1) he was denied the effective assistance of counsel due to a *per se* conflict based on attorneys from the same conflicts division representing him and Crista E.; (2) the trial court abused its discretion by denying his motion for a continuance of the termination hearing; (3) the trial court's finding of unfitness was against the manifest weight of the evidence; and (4) the trial court's finding that it was in the minor's best interest to terminate respondent's parental rights was against the manifest weight of the evidence. We affirm.

¶ 2                                    I. Background
¶ 3    The minor was born on November 14, 2008, and is the biological child of respondent and Crista E. Respondent and Crista E. were not married to each other. On January 26, 2009, the State brought a neglect petition alleging that the minor's environment was injurious as a result of Crista E. allowing contact between the minor and respondent, in violation of a previously established safety plan. Brandon Sanchez, an attorney from the Conflicts II division of the public defender's office, represented Crista E. The trial court ordered respondent to retain private counsel and submit to a paternity test.

¶ 4    The trial court conducted the next hearing on March 16, 2009, but respondent failed to

appear. On April 9, 2009, Crista E. stipulated to the allegation of neglect, and, as a result, the minor was adjudicated neglected and made a ward of the court. The trial court entered an order providing that respondent was not permitted to have contact with the minor until he appeared in court.

¶ 5        On May 20, 2009, the trial court heard testimony from Rachel Kocher, a caseworker with the Children's Home and Aid Society, regarding a protective service plan. Kocher testified that Crista E. and respondent had an "on and off" relationship. Kocher testified that she could not meet with respondent because he was uncooperative. Kocher testified that, after respondent failed a number of drug tests, he was court ordered in July 2008 to comply with a safety plan or move out of Crista E.'s house. Kocher testified that, after respondent failed another drug test, it was ordered that he could have only supervised visits with the minor. Kocher testified that respondent subsequently passed a substance abuse assessment but failed a parenting course due to lack of attendance. On June 2, 2009, the trial court ordered that Crista E. should retain guardianship and custody of the minor.

¶ 6        On May 10, 2010, Crista E. and her husband were shot to death in their home. On May 11, 2010, the State petitioned the trial court for an emergency modification of guardianship. Sanchez's appointment to represent Crista E. was vacated. The trial court appointed attorney Michael Hermann from the Conflicts III division of the public defender's office to represent respondent, who appeared in court for the first time. Respondent consented to the minor's guardianship and custody with the State, and the trial court lifted the no-contact order with respect to respondent.

¶ 7        At a December 20, 2010, permanency review hearing, attorney Amy Zalud from the Conflicts II division of the public defender's office advised the trial court that she was standing in for Hermann on behalf of respondent. During the hearing, Kocher testified that the minor was living with Robin W., her maternal grandmother. Kocher testified that the minor had "adjusted very well" to her living environment and that she was developmentally on track. Kocher testified that respondent was incarcerated and that he had not visited with the minor. Zalud cross-examined Kocher. Robin W. testified that she was the minor's foster mother and that she took good care of her. The trial court found that it was in the best interest of the minor that the "permanency goal be changed to that of substitute care pending court determination on termination of parental rights."

¶ 8        At the conclusion of the hearing, Zalud asked the trial court to vacate Hermann's appointment and appoint her as respondent's public defender. Zalud advised the trial court that respondent had requested that she represent him. After noting that a Conflicts II attorney had previously represented Crista E., the trial court denied the request.

¶ 9        On February 1, 2011, the State filed a three-count petition for termination of parental rights and power to consent to adoption. Count I alleged that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare. Count II alleged that respondent failed to protect the minor from conditions within her environment that were injurious to her welfare. Count III alleged that respondent was depraved.

¶ 10        On September 30, 2011, trial on the State's petition commenced. Respondent's counsel requested a continuance, claiming that "[respondent] does not feel that we're ready, we need

to speak further. Also, [respondent] has left notes and things that he has put together for this in his cell, so we're asking that the matter be continued." The trial court denied the motion, noting that the matter had already been continued "numerous times."

¶ 11 Kocher testified at trial that respondent had been incarcerated since May 13, 2010. Kocher testified that she had received two letters from respondent, on approximately August 31, 2009, and April 12, 2011, respectively. Kocher testified that she had not received any other letters or phone calls from respondent since his incarceration. Kocher testified that, to her knowledge, respondent had not otherwise attempted to contact her. Kocher testified that she had authority to make decisions allowing visitation for incarcerated parents but that respondent had not requested visitation with the minor. Kocher testified that respondent had not explained to her why he had not requested visitation. Kocher testified that respondent had not asked for any information regarding the minor's welfare, including doctor's visits.

¶ 12 Kocher further testified that she met with respondent before the minor's birth. After the minor was born, Kocher made "several phone calls" to respondent, but respondent refused to communicate with her. Kocher testified that respondent had not requested visitation for more than 18 months and that, to her knowledge, respondent had not provided any financial support for the minor. With respect to having the minor returned to respondent's custody, Kocher testified that she wanted respondent to comply with drug screening, get a substance abuse assessment, provide a stable home, and provide the minor with basic needs, including being involved with medical and school appointments. Kocher testified that she was not "any closer" to placing the minor back with respondent because respondent was still incarcerated, the minor had not visited respondent in "a long time," he had not completed substance abuse treatment, and, although respondent attended Narcotics Anonymous meetings, "that doesn't *** qualify for the treatment that he may need." Kocher also emphasized that respondent would not be able to provide the minor with a stable home, attend medical appointments, or make sure that the minor was well cared for during his incarceration. Kocher testified that she visited respondent in prison in May 2011 and advised him that the minor was doing well in foster care, but that respondent did not request that she visit him again.

¶ 13 During cross-examination from respondent's attorney, Kocher admitted that when she met with respondent in May 2011, she did not specifically ask respondent whether he wanted the minor brought to the prison to visit him. Kocher further acknowledged that she did not explain to respondent his options for visiting with the minor while he was incarcerated, such as phone calls.

¶ 14 Prior to resting, the State asked the trial court to take judicial notice of the previous court orders in the case, including the temporary custody order from May 11, 2010. Respondent did not proffer evidence. After further argument, the trial court found that the State proved the allegations in counts I and II of the petition by clear and convincing evidence.

¶ 15 The trial court proceeded to the best-interest-of-the-minor phase of the proceedings. The State called Kocher as a witness. Kocher testified that the minor had been residing with Robin W. and her family since May 26, 2010. Kocher testified that when the minor was placed in foster care, she was "very emotionally unstable" from witnessing her mother being shot. Kocher testified that the minor was doing very well in the foster home and that "[h]er

-4-

development was really good." Kocher testified that the foster parents were aware of the minor's background and would be able to provide counseling services if necessary. Kocher testified that the minor was "very attached" to her foster parents and that the minor had not seen respondent for "a long time."

¶ 16    Kocher further testified that she was concerned about respondent's ability to provide proper care for the minor, because he was incarcerated. Kocher testified that respondent was facing further charges for armed violence, in addition to possessing, manufacturing, and delivering illegal drugs. Kocher testified that respondent was arrested on those charges three days after Crista E. was shot. Kocher testified that, in her opinion, respondent's parental rights should be terminated. The parties rested, and the trial court took judicial notice of the evidence from the unfitness phase of the proceedings. After closing arguments, the trial court found that the State proved by a preponderance of the evidence that terminating respondent's parental rights was in the minor's best interest.

¶ 17    The trial court proceeded to a permanency hearing. No further evidence was presented, and the trial court took judicial notice of the evidence presented at the previous phases of the proceedings. The trial court found that it was in the minor's best interest to set adoption as the permanency goal. Respondent timely appealed.

¶ 18                                    II. Discussion

¶ 19                                 A. Conflict of Interest

¶ 20    Respondent's first contention on appeal is that he was denied the effective assistance of counsel because Zalud, from the Conflicts II division of the public defender's office, represented him after Sanchez, also an attorney from the Conflicts II division, had previously represented Crista E. in the proceedings. According to respondent, Zalud "presumably reviewed the file prepared" by Sanchez during his representation of Crista E., creating a *per se* conflict of interest. We disagree.

¶ 21    Section 1-5 of the Juvenile Court Act of 1987 (the Act) provides that minors and their parents have the right to be represented by counsel in juvenile proceedings. 705 ILCS 405/1-5 (West 2010). Illinois courts apply the same *per se* conflict analysis in cases under the Act as in criminal proceedings. *In re W.R.*, 2012 IL App (3d) 110179, ¶ 29 (citing *In re S.G.*, 347 Ill. App. 3d 476 (2004)). When seeking reversal pursuant to a *per se* conflict, a party "need not show that [his or her] counsel's performance was affected by the existence of the conflict." *S.G.*, 347 Ill. App. 3d at 480. A *per se* conflict arises when a party's counsel has ties to a person or entity that would benefit from an unfavorable judgment for that party, because the attorney's knowledge that his or her other client's favorable result would conflict with that party's interest "might 'subliminally' affect counsel's performance in ways [that are] difficult to detect and demonstrate." (Internal quotation marks omitted.) *In re Darius G.*, 406 Ill. App. 3d 727, 732 (2010) (quoting *People v. Hernandez*, 231 Ill. 2d 134, 142-43 (2008)). Our supreme court has identified three *per se* conflicts in the criminal context that require reversal: (1) defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) defense counsel contemporaneously represents a prosecution witness; or (3) defense counsel is a former

prosecutor who had been personally involved in the defendant's prosecution. *Hernandez*, 231 Ill. 2d at 143-44. We review *de novo* the issue of whether counsel's representation constituted a *per se* conflict (*Darius G.*, 406 Ill. App. 3d at 732), and our threshold inquiry is whether counsel represented or represents a party with conflicting interests to those of respondent's. See *W.R.*, 2012 IL App (3d) 110179, ¶ 29 (citing *People v. Graham*, 206 Ill. 2d 465, 472 (2003)).

¶ 22    In support of his contention, respondent primarily relies on this court's previous holdings in *Darius G.* and *In re Quadaysha C.*, 409 Ill. App. 3d 1020 (2011). In *Darius G.*, an attorney from the public defender's office represented the respondent at the termination phase of the proceedings. *Darius G.*, 406 Ill. App. 3d at 730. At the next substantive hearing, the attorney who originally represented the respondent appeared on behalf of the minor. *Id.* The attorney did not represent either the respondent or the minor during trial at the unfitness phase or the best-interest phase of the proceedings. *Id.* at 730-31. We held that the attorney's representation of the respondent and subsequent representation of the minor created a *per se* conflict requiring reversal. *Id.* at 738. In reaching our determination, we adopted the holding and reasoning outlined in *S.G.*, noting that the " 'concern is with the opinions [the attorney] *had already formulated* about the "best interest of the children" when representing them and how those opinions might adversely impact [the attorney's] ability to later effectively represent [the mother] with "undivided loyalty." ' " (Emphasis in original.) *Id.* at 734 (quoting *S.G.*, 347 Ill. App. 3d at 481). Specifically, we expressed concern that the attorney likely had confidential communications with the respondent, and, if the attorney "concluded from this confidentially gleaned information that [the] respondent was unfit or that her rights should be terminated, [the attorney] was subsequently placed in the unique position of being able to *use* this information when [representing the minor]." (Emphasis in original.) *Id.* at 735. We further emphasized that, although the attorney's representation of the parties was minimal–he represented the respondent at one hearing and, later, the minor at one hearing–that consideration was not dispositive. *Id.* at 736-37. Specifically, we noted that "we assume that [the attorney] prepared, read the file, and spoke with [the] respondent about the case" and that the "brevity of the attorney's representation of the minor did not preclude application of the [*per se*] rule or alter the fact that the rule's purpose is to protect against what is *not* reflected in the record." (Emphasis in original.) *Id.* at 737. In conclusion, we stated:

"From a pragmatic standpoint, we agree with *S.G.* that the better rule is to find that [the attorney's] representation of both [the] respondent and [the minor] in these termination proceedings created a *per se* conflict. *** A clear rule better informs attorneys that, while multiple attorneys from the public defender's office may substitute to represent the same client, the *same* attorney may not during the proceedings appear on behalf of *different* clients." (Emphases in original.) *Id.* at 738.

¶ 23    We have since followed our holding in *Darius G.* In *Quadaysha C.*, the State filed a petition alleging that 5 of the respondent's 10 children were neglected. *Quadaysha C.*, 409 Ill. App. 3d at 1021. At the dispositional hearing, an attorney from the public defender's office appeared on behalf of the attorney for the Court Appointed Special Advocate (CASA). *Id.* Beginning with the first permanency hearing, that attorney appeared for the respondent,

although a different court-appointed attorney appeared on the respondent's behalf after the State filed its petition to terminate the respondent's parental rights. *Id.* Adhering to *Darius G.*, we held that a *per se* conflict existed, warranting reversal. *Id.* at 1023-35. Specifically, we concluded that "[w]here, as here, the attorney represents the minor first, 'possibly forming the opinion that it would be in the child's best interest for the respondent's rights to be terminated,' the 'conflict and resulting prejudice are clear.' " *Id.* at 1024 (quoting *Darius G.*, 496 Ill. App. 3d at 735).

¶ 24    We find both *Darius G.* and *Quadaysha C.* distinguishable and, therefore, decline to apply those holdings to the matter presently before us. As emphasized in *Darius G.*, the underlying concerns with the same attorney representing adversarial parties in the same proceedings are the attorney's undivided loyalty in light of opinions already formed while representing the adverse party and the attorney using confidentially gleaned information against that party while representing the other party later in the proceedings. *Darius G.*, 406 Ill. App. 3d at 734-35. Those concerns, however, are not as prevalent here. Specifically, the application of the *per se* conflict rule in *Darius G.* and *Quadaysha C.* was premised on the reasonable presumption that each attorney had confidential communications and reviewed the case file while representing each of the adversarial parties and could have later used that information against one party when representing the other. However, such a presumption is not appropriate when the alleged conflict involves two attorneys from the same conflicts division representing adversarial parties in the same proceedings, as opposed to the same individual attorney representing adversarial parties in the same proceedings.

¶ 25    Moreover, we emphasize that, by not extending the *per se* conflict rule to situations where attorneys from the same conflicts division represent adversarial parties in a termination proceeding, we are not undermining the justification for the *per se* conflict rule. In *Hernandez*, our supreme court explained the justification for the *per se* conflict rule as being twofold. First, the court noted that counsel's knowledge that a result favorable to his or her other client would inevitably conflict with a defendant's interest might subliminally affect counsel's performance in ways that would be difficult to detect and demonstrate. *Hernandez*, 231 Ill. 2d at 143. Second, the court noted the possibility that counsel's conflict would subject counsel to later charges of unfaithful representation. *Id.* Here, respondent has not identified, nor can we discern, a compelling reason for why Zalud's representation of respondent would have been "subliminally affected" by virtue of Sanchez's–her colleague in the Conflicts II division–previous representation of Crista E. Similarly, we do not believe that Zalud would later be subject to a charge of unfaithful representation merely from her association with Sanchez.

¶ 26    Further, we reemphasize our finding in *Darius G.* of the benefits resulting from a clear rule that the same attorney may not represent adversarial parties during the same proceedings. *Darius G.*, 406 Ill. App. 3d at 738. From a "pragmatic standpoint," however, we believe that limiting the *per se* rule to the scenario presented in *Darius G.* provides clear guidance to attorneys and trial courts regarding appropriate representation by appointed counsel. See *id.* at 738-39.

¶ 27    We are cognizant of the dissent's concerns regarding conflict-free representation. However, we believe that extending the *per se* rule to the circumstances in this case is not

necessary to achieve that goal. Moreover, the dissent's position would undermine the important policy of protecting minors' best interests by providing stability and finality in termination proceedings. See *In re Kenneth F.*, 332 Ill. App. 3d 674, 679-80 (2002).

¶ 28    In *In re Paul L.F.*, 408 Ill. App. 3d 862 (2011), the reviewing court held that, consistent with *Darius G.*, the same attorney representing adverse parties in the same proceeding constituted a *per se* conflict. *Id.* at 865. The dissent in that case, relying on *Kenneth F.*, noted that this court previously emphasized the importance of finality over the procedural rights of a respondent in a termination proceeding, when the respondent was not prejudiced. *Id.* at 869 (Hudson, J., dissenting). In *Paul L.F.*, the dissent opined:

> "Absent a showing of prejudice, the same result should obtain here ***. Instead, the majority undoes nearly five years of litigation because an attorney *** made a single appearance on behalf of the minor on September 11, 2006, and an appearance on respondent's behalf on April 20, 2010. *** To allow such a *de minimis* violation of the *per se* conflict rule to undo the whole proceeding needlessly prolongs an already lengthy proceeding and denies stability to the minor whom this proceeding is designed to protect." *Id.* at 869-70 (Hudson, J., dissenting).

The *Paul L.F.* dissent further emphasized that termination cases are among the few select types of cases subject to mandatory acceleration on appeal and that a *per se* rule requiring reversal for a conflict without a showing of prejudice does not strike the appropriate balance between a party's right to the effective assistance of counsel and a child's need for finality in termination proceedings. *Id.* at 870 (Hudson, J., dissenting). The dissent in *Paul L.F.* concluded:

> "The *per se* rule certainly provides staunch protection for a party's right to counsel; however, that is not the only interest at stake here. *** By mandating reversal for even technical and *de minimis* violations of the right to counsel, the *per se* rule hardly recognizes the competing interest in stability and finality at all." *Id.* at 873 (Hudson, J., dissenting).

¶ 29    While we stress that our determination in this case does not undermine our previous holdings that the same attorney representing adverse parties in the same proceedings constitutes a *per se* conflict, we find the *Paul L.F.* dissent persuasive in this matter. Here, the dissent's rationale for extending the *per se* conflict rule appears to be that, because Zalud "theoretically" had access to Crista E.'s file, Sanchez's conflict was imputed to her and a *per se* conflict exists. *Infra* ¶ 54. However, unlike in *Darius G.*, there is no reason to presume that Zalud reviewed Crista E.'s file or communicated with Crista E. before representing respondent. Thus, finding a *per se* conflict based on an unsubstantiated theory that Zalud had access to Crista E.'s file–as opposed to finding a *per se* conflict on the reasonable presumption that an attorney who represents a party will have reviewed the file and communicated with that party (see *Darius G.*, 406 Ill. App. 3d at 737)–disregards the competing but equally important interest of providing stability and finality to minors in termination proceedings.

¶ 30    We further note that our decision today is consistent with this court's recent opinion in *In re Tamera W.*, 2012 IL App (2d) 111131. In *Tamera W.*, we held that the mother's

representation by a conflicts unit in a previous juvenile proceeding that ended in 2003 did not constitute a *per se* conflict when that same conflicts unit subsequently represented the respondent in a 2008 termination proceeding where the mother was also a party. *Id.* ¶¶ 40-42.

¶ 31    We are not persuaded by the dissent's attempt to distinguish *Tamera W.* based on the noncontemporaneous nature of that conflicts unit's representation and based on the conclusion that the parties' interests did not conflict. *Infra* ¶ 57. The dissent's concern that attorneys in the same conflicts unit theoretically have access to the same files during contemporaneous representation is also present in noncontemporaneous proceedings. In addition, whether the mother's and the respondent's interests in *Tamera W.* were in conflict, the attorneys within the conflicts unit could still have gleaned information while representing the mother that could have later affected that unit's representation of the respondent. Therefore, the dissent's attempt to distinguish *Tamera W.* only further exemplifies the difficulty in expanding the *per se* conflict rule to include different attorneys from the same conflicts unit.

¶ 32    In sum, although we recognize the importance of conflict-free representation, we must also consider "a primary purpose" of protecting the best interests of children, "who are the object[s] of" termination proceedings. See *In re Kenneth F.*, 332 Ill. App. 3d at 679-80. As a result, limiting the *per se* conflict rule in termination proceedings to situations where the same attorney represents adverse parties in the same proceeding strikes the appropriate balance between ensuring conflict-free representation and protecting the best interests of minors by providing stability and finality to termination proceedings. This limitation is consistent with our supreme court's rules of professional responsibility and provides clear guidance to trial courts and practitioners. See *Paul L.F.*, 408 Ill. App. 3d at 867 (citing Ill. Rs. Prof'l Conduct R. 1.7(a)(1) (eff. Jan. 1, 2010)).

¶ 33    Finally, we note that, even if a *per se* conflict does not exist, respondent can still establish an ineffective-assistance-of-counsel claim by showing an actual conflict of interest that adversely affected his counsel's performance. See *Hernandez*, 231 Ill. 2d at 144. To establish an actual conflict of interest, respondent must point to some specific defect in counsel's strategy, tactics, or decision making attributable to the alleged conflict. *Id.* Here, respondent does not argue, nor does our careful review of the record reflect, a defect in Zalud's or Hermann's strategy, tactics, or decision making that could be attributed to an alleged conflict. Accordingly, we find that no conflict exists.

¶ 34                              B. Motion to Continue Trial

¶ 35    Respondent's second contention on appeal is that the trial court abused its discretion by declining to continue the trial. Respondent argues that the trial court abused its discretion when it denied his request for a continuance, because it had previously granted the State's motion for a continuance and had also continued the trial on its own motion. Respondent further argues that denying him the opportunity to prepare with counsel constituted a substantial injustice.

¶ 36    Illinois recognizes that " 'serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor.' " *In re Jamarqon C.*, 338 Ill. App. 3d

639, 644 (2003) (quoting 705 ILCS 405/2-14 (West 2000)). There is no absolute right to a continuance in proceedings pursuant to the Act, and the trial court has discretion whether to grant or deny a continuance motion. *In re K.O.*, 336 Ill. App. 3d 98, 104 (2002). The trial court's decision will not be disturbed "absent manifest abuse or palpable injustice." *Id.* In addition, the denial of a request for a continuance is not a ground for reversal unless the complaining party has been prejudiced by the denial. *Jamarqon C.*, 338 Ill. App. 3d at 639.

¶ 37    In the current matter, respondent cannot demonstrate that prejudice resulted from the trial court's denial of his request for a continuance. The trial court found that the State met the requisite burden of proving that respondent failed to take a reasonable degree of interest, concern, or responsibility as to the minor's welfare and that he failed to protect the minor from conditions injurious to her welfare. As we will elaborate below, the record reflects that the State provided ample evidence to support the petition's allegations. Kocher testified extensively on her interaction with respondent. She testified that she had only sporadic contact with respondent since April 2009 and that respondent had not requested visitation with the minor in the 18 months prior to the trial. Further, Kocher testified that she was concerned about respondent's ability to provide for the minor in light of his pending charges for armed violence and drug possession, manufacturing, and distribution. Respondent has failed to demonstrate how his attorney could have undermined that evidence against him if the trial date had been continued. See *Id.* at 645 (rejecting the respondent's contention that the trial court abused its discretion in denying a continuance when the respondent did not demonstrate how, with a continuance, he could have undermined the "overwhelming" evidence against him). Accordingly, we reject respondent's contention that the trial court abused its discretion in denying his request for a continuance.

¶ 38                              C. Unfitness Finding

¶ 39    Respondent's third contention on appeal is that the trial court's finding that respondent was unfit was against the manifest weight of the evidence. Respondent maintains that because the minor was in foster care for more than a year, the trial court could not have used the statutory mechanism of respondent failing to protect the minor from an injurious environment as a basis to terminate his parental rights. Respondent further argues that he had regular weekly visits with the minor from her birth in November 2008 until the trial court entered an order denying him visitation in April 2009. In addition, respondent maintains that his ability to visit with the minor was limited due to his incarceration in May 2010.

¶ 40    The Act provides a bifurcated mechanism to determine whether parental rights may be terminated–there must first be a showing of parental unfitness followed by a showing that the best interest of the child is served by severing parental rights. *In re Konstantinos H.*, 387 Ill. App. 3d 192, 203 (2008). Because termination of parental rights is a serious matter, the State must prove by clear and convincing evidence one statutory factor of unfitness before the termination of parental rights may ensue. *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003). If properly proven, any one ground of unfitness is sufficient to find a parent unfit. *Id.* A trial court's finding of unfitness is entitled to great deference and we will not disturb it unless it is against the manifest weight of the evidence. *In re K.B.*, 314 Ill. App. 3d 739, 748 (2000).

The trial court's finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *In re D.L.*, 326 Ill. App. 3d 262, 270 (2001). "We defer to the trial court for factual findings and credibility assessments because it is in the best position to make such findings" and "[w]e will not reweigh evidence or reassess witness credibility on appeal." (Internal quotation marks omitted.) *In re April C.*, 345 Ill. App. 3d 872, 889 (2004).

¶ 41 Section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2008)) permits a finding of neglect based on failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. In evaluating an allegation pursuant to section 1(D)(b), a trial court must focus on a parent's reasonable efforts, rather than success, in communicating, visiting, or otherwise showing interest in the child. *Konstantinos H.*, 387 Ill. App. 3d at 204. A court should consider any circumstances making it difficult to visit, communicate, or otherwise show interest, including difficulty obtaining transportation to the child's residence, the parent's poverty, conduct of others that hinders visitation, and the motivation underlying the failure to visit. *Id.* "If personal visits were somehow impractical, courts consider whether a reasonable degree of concern was demonstrated through letters, telephone calls, and gifts to the child, taking into account the frequency and nature of those contacts." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006). Noncompliance with an imposed service plan or irregular visitation with the minor is sufficient for an unfitness finding. *Konstantinos H.*, 387 Ill. App. 3d at 204.

¶ 42 In the current matter, a conclusion opposite to the trial court's finding that respondent was unfit by failing to show a reasonable degree of interest in the minor is not clearly evident. Respondent emphasizes that "while [he] could have requested visitation with the minor, his ability to meet with her in any appropriate setting was severely limited due to his incarceration." We recognize that respondent was incarcerated in May 2010 and that, according to Kocher, he was undergoing parenting classes and Narcotics Anonymous meetings while in prison. Nonetheless, the trial court heard testimony from Kocher that she visited respondent in May 2011 and discussed the minor with him. Kocher testified that, after that visit, respondent did not request that she update him on the minor again. In addition, Kocher testified that respondent did not request visitation with the minor since his incarceration in May 2010 or offer an explanation for why he did not request visitation. Kocher further testified that the two letters she received from respondent did not inquire into the minor's medical or educational welfare. There was no other evidence that respondent attempted to communicate with the minor via telephone or letters, sent gifts, or expressed concern over her well-being; and respondent proffered no explanation for why he failed to do so. Therefore, despite respondent's incarceration, Kocher's testimony regarding his lack of efforts to communicate with the minor or otherwise manifest a concern regarding her well-being provided the trial court with a sufficient factual basis to find respondent unfit. See *Konstantinos H.*, 387 Ill. App. 3d at 205-06. Accordingly, the trial court's finding of unfitness was not against the manifest weight of the evidence.

¶ 43                                    D. Best Interest

¶ 44        Petitioner's final contention on appeal is that the trial court erred in finding that it was in the minor's best interest to terminate his parental rights. Respondent emphasizes that he is the minor's only living parent and that keeping his parental rights intact is important to the minor's identity. Respondent also notes that he kept regular visitation with the minor from her birth in November 2008 through April 2009, when the trial court issued the no-contact order.

¶ 45        Once a trial court finds a parent unfit under one of the grounds of section 1(D) of the Adoption Act, the court must consider whether it is in the best interest of the child to terminate parental rights pursuant to the Act. *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004) (citing 705 ILCS 405/1-3 (West 2002)). All considerations yield to the child's interest in a stable, loving home life. *In re D.T.*, 212 Ill. 2d 347, 364 (2004); see also *In re Travarius O.*, 343 Ill. App. 3d 844, 854 (2003). The State must prove by a preponderance of the evidence that termination is in the child's best interest. *D.T.*, 212 Ill. 2d at 366. The factors that a trial court should consider in making its best-interest determination include: (1) the physical safety and welfare of the child, including food, shelter, health, and clothing; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties, including church, school, and friends; (7) the child's need for permanence; (8) the uniqueness of every family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preference of the persons available to care for the child. See 705 ILCS 405/1-3(4.05) (West 2010). On review, our function is not to substitute our judgment for that of the trial court on questions regarding the witnesses' credibility and the inferences to be drawn from their testimony; the trial court is in the best position to observe the conduct and demeanor of the parties and witnesses as they testify. *In re Adoption of J.R.G.*, 247 Ill. App. 3d 104, 109 (1993). A trial court's decision on the best interest of a child will not be reversed unless it is against the manifest weight of the evidence. *In re A.H.*, 195 Ill. 2d 408, 425 (2001); *Tiffany M.*, 353 Ill. App. 3d at 892.

¶ 46        Our review of the record makes clear that the minor needs a safe and stable home environment and that the trial court's ruling was in her best interest. The minor was living with Crista E. and witnessed her death. Shortly thereafter, respondent was incarcerated, and at the time of trial he was facing charges of armed violence and drug possession, manufacturing, and distribution. These events were relevant to the trial court's consideration of the minor's physical safety and welfare.

¶ 47        Further, the trial court properly applied the statutory factors when determining that terminating respondent's parental rights was in the minor's best interest. The trial court heard testimony from Kocher that the minor had been living with her foster family since May 26, 2010. When the minor was first placed in foster care, she was "in an awful place" and emotionally unstable from witnessing her mother's death. Kocher testified that the minor had since bonded with her foster parents, was "very very attached" to her foster mother, and was "very attached" to her foster father and that her "development is really good." Kocher testified that, in her opinion, respondent's parental rights should be terminated and that the minor should be adopted by her foster parents. In rendering her opinion, Kocher emphasized

the minor's need for permanency. With respect to respondent's argument that he maintained regular contact with the minor until the trial court entered the no-contact order in April 2009, the trial court made clear that the no-contact order resulted from respondent's failure to appear in court. When respondent appeared in court on May 11, 2010, the trial court lifted that order and permitted respondent to have visitation with the minor at the discretion of the Department.

¶ 48    Based on the foregoing, we hold that the trial court's decision that terminating respondent's parental rights was in the minor's best interest was not against the manifest weight of the evidence.

¶ 49                                   III. Conclusion

¶ 50    For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County.

¶ 51    Affirmed.

¶ 52    PRESIDING JUSTICE JORGENSEN, dissenting.

¶ 53    As to the first issue before this court, I respectfully dissent because I conclude that a *per se* conflict of interest was present here such that respondent was denied the effective assistance of counsel.

¶ 54    In this case, Sanchez and Zalud, two attorneys from the Conflicts II division of the public defender's office, represented in the same trial court proceedings parties with conflicting interests (Crista E. and respondent). The conflicts divisions were presumably created to ensure conflict-free representation in scenarios where the public defender is appointed to represent multiple parties in the same litigation. In other words, the point of the divisions is to have attorneys from the same conflicts division represent the same client (or clients who do not have conflicting interests). Zalud theoretically had, by virtue of being in the same division, access to Crista E.'s file, which was prepared by Sanchez, who was also of the Conflicts II division. See *Darius G.*, 406 Ill. App. 3d at 735-37 (in a *per se* conflict analysis, theoretical, off-the-record activity by counsel may be assumed). This is sufficient, in my view, for finding a *per se* conflict of interest and, in this case, I would hold that the goal of conflict-free representation was not achieved. Indeed, the trial court acknowledged as much when it denied Zalud's request to be appointed as respondent's attorney, where Sanchez had previously represented Crista E. in the litigation.

¶ 55    I believe that the establishment of separate conflicts divisions imputes the conflict of one attorney in a division to all attorneys in the same division who might represent a party with a conflicting interest to that of another party in the same proceedings. Therefore, here, although the same attorney did not represent both Crista E. and respondent (*i.e.*, the parties with conflicting interests), the fact that both Zalud and Sanchez were in the *same* conflicts division necessarily, in my view, means that they shared the *same* conflict. A conflicts division, I believe, acts as one attorney.

-13-

¶ 56    I agree with the majority's conclusion that our case law is factually distinguishable. First, the factual scenarios in several cases involved the *same attorney(s)* representing at different times during the same proceedings *clients with conflicting interests*. *Quadaysha*, 409 Ill. App. 3d at 1023-24 (*per se* conflict where the same attorney represented at different times in the same case both the respondent and her five children's guardian *ad litem*); *Paul L.F.*, 408 Ill. App. 3d at 865 (although not addressing whether the parties had conflicting interests, holding there was a *per se* conflict where one of the respondent/mother's 10 attorneys represented two other parties–the father and the child–and another of her attorneys represented one other party–the father–during the proceedings); *Darius G.*, 406 Ill. App. 3d at 738 (*per se* conflict where the same attorney appeared in the same proceedings once for the respondent and once for the child, *i.e.*, for parties with conflicting or competing interests).

¶ 57    Second, I conclude that *Tamera W.*, 2012 IL App (2d) 111131, ¶¶ 40-42, a recent case where this court found *no per se* conflict, is distinguishable because different attorneys from the same conflicts unit, *in different proceedings*, represented *different clients* whose interests did *not conflict*. The attorneys in the first case had represented the mother five years earlier when she was the minor in an abuse/neglect case, and those attorneys were no longer with the unit. The attorneys in the case on appeal, who represented the respondent/father, had no knowledge of or involvement in the juvenile proceedings where the mother was the minor; and, again, the mother's and the respondent's interests did *not* conflict. *Id.* Thus, unlike this case, *Tamera W.* involved *unrelated* (*i.e.*, the parties' interests did not conflict) and noncontemporaneous representation by different attorneys in the same conflicts unit.

¶ 58    I would extend the foregoing case law and hold that there exists a *per se* conflict of interest in the scenario present in this case, namely, where attorneys from the same conflicts division *contemporaneously* represent in the same proceedings parties who have conflicting interests. I acknowledge the special nature of a public defender's office. Courts have recognized that public defender's offices are generally *not* treated as law firms for purposes of conflicts of interest. See, *e.g.*, *People v. Banks*, 121 Ill. 2d 36, 41 (1987). However, within the public defender's office that was involved in this case, there are *separate* conflicts divisions established for the purpose of avoiding conflicts of interest, presumably by segregating notes and files to avoid situations where an attorney *or attorneys* from the same division represent in the same proceedings parties with conflicting interests. This purpose was not achieved here, and, therefore, I would hold that there is a *per se* conflict of interest. I applaud the Winnebago County public defender for establishing separate conflicts divisions. However, under the scenario that played out in this case, I conclude that the goal of conflict-free representation was not achieved.

¶ 59    No one can argue with the policy, mentioned by the majority, of protecting minors' best interests by providing stability and finality in termination proceedings. However, I emphasize that, where an advocate in termination proceedings labors under a *per se* conflict of interest, minors' best interests cannot be protected.

¶ 60    Finally, I agree with the majority that the facts in this case would not support a finding of an *actual* conflict of interest.