2021 IL App (1st) 210595

FIFTH DIVISION
Opinion filed: September 3, 2021

No. 1-21-0595

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* M.D. and M.D., Minors | ) | Appeal from the |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | Nos. 18 JA 841 |
| v. | ) | 18 JA 842 |
| | ) | |
| SHAKIRA H., | ) | Honorable |
| | ) | Kimberly Lewis, |
| Respondent-Appellant.) | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1     The respondent, Shakira H. (the biological mother), appeals from orders of the circuit court

of Cook County, finding her infant twins, M.D. and M.D. (the minors), to be neglected;

adjudicating them wards of the court; and placing them in the custody of the Department of

Children and Family Services (DCFS). Marcus D., the father of the minors, has not contested the

circuit court's orders and is not party to this appeal. On appeal, the respondent argues that the

court's finding the minors were neglected was against the manifest weight of the evidence and the court abused its discretion by declining her attorney's request for a continuance at the disposition hearing. For the reasons that follow, we affirm.

¶ 2    The respondent gave birth to the minors on August 1, 2018. On August 30, 2018, the State filed petitions for adjudication of wardship, alleging that the minors were both neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2018)) because their environment was injurious to their welfare and abused pursuant to section 2-3(2)(ii) of the Act (705 ILCS 405/2-3(2)(ii) (West 2018)). The State alleged the following facts in support of their petition:

"Mother has two prior indicated reports. Mother has two minors not in her care and three other minors who are in DCFS custody with findings having been entered. Father is the parent of two of those minors. Offered and recommended reunification[] services are outstanding. Parents were involved in an altercation with each other at the hospital right before mother gave birth to the minors. Parents are married and reside together."

¶ 3    On September 13, 2019, the circuit court held an adjudication hearing. The State admitted two exhibits into evidence without objection: a copy of records from the biological father's treatment with Treatment Alternatives for Safe Communities (TASC) and a copy of a DVD containing security footage from Illinois Masonic Hospital captured on the night before the minors were born. The parties agreed to proceed by way of a written stipulation of the facts.

¶ 4    According to the written stipulation, DCFS Division of Child Protection investigator Deborah Anderson-Perry, who took protective custody of the minors on August 29, 2018, would testify to the following:

"a. Respondent-mother has 3 children, [S.M., M.D., and S.D.], under DCFS guardianship with findings of neglect and abuse [] [Marcus D.] is the father of [M.D. and S.D.];

b. the parents have a history of domestic violence and drug abuse;

c. on August 8, 2018[,] the father tested positive for amphetamines; [] and had not been compliant with services prior to the birth of the minors;

d. on July 31, 2018[,] the mother was in the maternity ward at Illinois Masonic when the father arrived. The parents began to argue[,] and the mother subsequently hit father [*sic.*] about the head and body. [] Security arrived and took the father out of the hospital.

e. the minors remained in the hospital until August 29, 2018[,] because they were born pre-mature."

¶ 5    After the stipulation was read into the record, the court admonished both parents that if they consented to the stipulation, it and the facts contained therein would be received into evidence for the purposes of this hearing. Both parents answered that they understood. The court then asked if both parents "voluntarily consent[ed] to the stipulation and agree[d] that if there were testimony today, that it would support the facts stated in the stipulation." Both parents answered in the affirmative. The court admitted the stipulation into evidence, and the State then rested.

¶ 6    Neither of the parents presented any evidence, nor did the minors' guardian *ad litem*. During argument, both parents asked the court to find only that the minors were neglected due to an environment injurious to the twins' welfare because there was no evidence that the minors were subject to any physical abuse. The respondent's counsel stated the following: "Judge, I would be

asking for a finding of [neglect injurious environment] only, as well, based on the stipulation that was just admitted." In rebuttal, the State also agreed that the court should find that the minors were neglected based on an injurious environment.

¶ 7    The court found that the State proved by a preponderance of the evidence that the minors were neglected based on an injurious environment and that the minors' neglect was the result of "abuse or neglect" inflicted by both the respondent and the biological father. The court entered an order that day reflecting its findings.

¶ 8    The court initially scheduled a disposition hearing for February 11, 2021, that was to proceed via Zoom. On that date, the respondent was present, but Marcus D. was not. The State informed the court that Marcus D., who was incarcerated at the time, was not present because the prison could not locate the Zoom video writ for his appearance. By agreement of all parties, the hearing was continued to April 19, 2021.

¶ 9    On that date, all the parties were present via Zoom for the disposition hearing except for the respondent. The respondent's counsel requested a continuance based on her absence, stating the following: "[M]y client is not present. And based on a series of events, I don't know that she has the ability to be present today." Counsel added that she tried calling the respondent "right before this proceeding again and I went to voicemail and it was full, so I was not able to leave a message, so I don't know if she even has the court information." Counsel also noted that the respondent "was present at the last court date in February." The following colloquy then occurred:

"THE COURT: Okay. So she was notified of today's hearing? She was here on the last court date; is that what you're saying?

[COUNSEL]: Yes, she was here on the last court [date].

THE COURT: Okay. How did she access Zoom on the last court date?

[COUNSEL]: I think via phone or computer, but, Judge, she is in a different state right now.

THE COURT: But the information would still be the same. I can take some - - As far as the Zoom information would be the same. Maybe we can take some brief testimony of the worker to see if there's any issues which no one is aware, otherwise I would have to basically consider the notice issue in terms of why she hasn't - - as to why she's not here or the fact that she isn't here."

¶ 10    Per the court's request, Virginia Towner, a supervisor at Kids Above All who was assigned to the minors' case, was called to testify. Towner testified that she last had contact with the respondent at the beginning of March 2021, and her only source of information regarding the respondent's current whereabouts is the minors' older sibling, S.M. According to Towner, S.M. related the following information to her regarding the respondent's whereabouts.

¶ 11    At the end of March 2021, the respondent took S.M. to Las Vegas and there was an "incident" between the two. S.M. later returned to Chicago, but the respondent was unable to board the plane because she did not possess the proper identification. S.M. was under the impression that the respondent was not currently homeless because she either knew someone in Las Vegas or met someone while there. Towner stated that she received numerous phone calls from a number that S.M. confirmed belongs to the respondent, but each time Towner answered, the person on the other end hung up. According to Towner, this occurred with such frequency that she ultimately blocked the number. On cross-examination, Towner stated that her agency tried to call the respondent that morning at the number provided by S.M. to remind her to appear but were unable to reach her. She

also acknowledged that it was possible the respondent might not have the Zoom information for the hearing if she was using a new phone.

¶ 12    Before issuing a ruling, the court asked Towner if her contact information had changed, and she answered that it had not. The court then denied counsel's request for a continuance, finding that it was "for the best interest and well-being of the minors and establishing stability and permanency for them." In announcing its decision, the court noted that the respondent had the information needed to attend the prior court date via Zoom and she could have reached out to the agency if she had an issue attending the instant hearing but did not do so. The court concluded by noting that the respondent had 30 days to come forward and present evidence showing that she had just cause for her failure to appear. The respondent never filed such a motion.

¶ 13    The court then proceeded with the disposition hearing. The court began by taking judicial notice of the evidence and findings from the adjudication hearing. The State entered two exhibits into evidence without objection: an October 10, 2018 Integrated Assessment and a February 25, 2021 service plan. The State also presented Towner, who testified regarding the respondent's failure to complete recommended services and to multiple incidents where the respondent visited with the minors while under the influence.

¶ 14    The circuit court found that the respondent was unable to care for the minors, adjudicated them to be wards of the court, and placed them in the custody of DCFS. This appeal followed.

¶ 15    On appeal, the respondent raises two arguments. First, she contends that the court's finding at the adjudication hearing that the minors were neglected due to an injurious environment was against the manifest weight of the evidence. Second, she argues that the court abused its discretion

when it denied her counsel's request for a continuance during the disposition hearing on account of her absence.

¶ 16   As a preliminary matter, we must first address the issue of our jurisdiction. Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) requires that the notice of appeal "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." In her notice of appeal, the respondent listed only the dispositional order of April 19, 2021. In her appellate brief, however, she challenges not only the dispositional order but also the September 13, 2019 adjudication order. The State contends that the respondent's failure to specify her intent to challenge the adjudication order means that we lack jurisdiction to hear such a challenge. The respondent counters that this court has jurisdiction because an adjudication order is a step in the procedural progression leading to the dispositional order.

¶ 17   As the parties note, the appellate court is divided on this question. The State contends that we should follow *In re J.P.*, 331 Ill. App. 3d 220 (2002), which was decided by a panel of this court. In *In re J.P.*, the court held that a notice of appeal solely from the dispositional order did not give the appellate court jurisdiction to review a preceding adjudicatory order. The court explained that "[w]hen an appeal is taken from a specified judgment, the appellate court acquires no jurisdiction to review other judgments or parts of judgments not specified or fairly inferred from the notice." (Emphasis added.) *In re J.P.*, 331 Ill. App. 3d at 234. Without examining whether an adjudication order is "fairly inferred" from a dispositional order, the court concluded that it was without jurisdiction to hear her challenge to the adjudication order. *Id.*

¶ 18   The respondent, on the other hand, urges this court to follow *In re D.R.*, 354 Ill. App. 3d 468 (2004), in which the Third District disagreed with *In re J.P.*, relying primarily on the holding

in *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427 (1979). In *Burtell*, our supreme court found that "the appeal from a subsequent final judgment draws in question all prior non-final orders and rulings which produced the judgment." 76 Ill. 2d at 433. The *D.R.* court found that "the question of whether a judgment is 'fairly inferred' from the notice of appeal must include a consideration of whether the unspecified judgment is a step in the procedural progression leading to the judgment specified in the notice of appeal." 354 Ill. App. 3d at 472. Applying the *Burtell* analysis to the facts of the case, the court noted that, under statutory law, it was only after the trial court held an adjudicatory hearing; found the minor to be abused, neglected, or dependent; and stated in writing the factual basis for its finding that the court could even schedule a dispositional hearing. *Id.* at 473 (citing 705 ILCS 405/2-21(1), (2) (West 2002)). The *D.R.* court therefore concluded that an adjudicatory order was " 'fairly inferred' " in a subsequent dispositional order because it is a "a step in the procedural progression leading to the dispositional order." (Internal quotations omitted.) *Id.*

¶ 19    After considering both arguments, we agree with the respondent that *In re D.R.* is the better-reasoned decision, and we therefore decline to follow our previous decision in *In re J.P.* As the *D.R.* court convincingly noted, the fatal flaw in the *J.P.* court's reasoning is that it failed to consider the *Burtell* analysis when reaching its conclusion. We also note that *Burtell* instructs appellate courts to liberally construe notices of appeal. 76 Ill. 2d at 433. With that idea in mind, we conclude, as did *In re D.R.*, that an adjudication order is a step in the procedural progression leading to a dispositional order. Consequently, we conclude that we have jurisdiction to review the respondent's challenge to the September 13, 2019 adjudication order.

¶ 20    Turning to the merits, the respondent first argues that circuit court's September 13, 2019 order finding that the minors were neglected due to an injurious environment is against the manifest weight of the evidence. Specifically, she argues that the written stipulation agreed to by the parties does not contain any allegation that the minors were set to be released to an unsafe home. The State and the minors' public guardian counter that the respondent cannot challenge the court's finding in this regard because she invited the error by asking the court to enter such a finding. We agree with the State and the public guardian.

¶ 21    "[A] party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court." *In re William H.*, 407 Ill. App. 3d 858, 870 (2011) (citing *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007)). Moreover, "a party cannot complain of error that she induced the court to make or to which she consented." *In re E.S.*, 324 Ill. App. 3d 661, 670 (2001). "The principals of forfeiture apply to proceedings conducted pursuant to the Juvenile Court Act." *In re H.D.*, 343 Ill.App.3d 483, 489 (2003).

¶ 22    In the instant case, the adjudication hearing proceeded by way of a written stipulation of facts. The court admonished the respondent that it would consider the stipulation as evidence for the purposes of the adjudication hearing, and she acknowledged that she both understood the consequences of agreeing to the stipulation and consented. No other evidence was presented to the court. During argument, the respondent's counsel told the court that she "would be asking for a finding of [neglect environment injurious] only *** based on the stipulation that was just admitted." In other words, the respondent invited the error she now complains of, and as a result, she has forfeited her right to raise this issue on appeal. Forfeiture aside, we find that the respondent's argument has no merit.

¶ 23    The Act provides a two-step process that trial court's must utilize to decide whether a minor should become a ward of the court. *In re A.P.,* 2012 IL 113875, ¶ 18. Step one of the process is the adjudicatory hearing, at which the court considers only whether the minor is abused, neglected, or dependent. *Id.* ¶ 19. A hearing on a petition for adjudication of wardship is civil in nature, and a finding of abuse or neglect need only be supported by a preponderance of the evidence. 705 ILCS 405/2-18(1); see *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007). A preponderance of the evidence is the amount of evidence that leads the trier of fact to find that a condition is "more probably true than not." *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004).

¶ 24    Generally, "neglect" has been defined as the failure of a responsible adult to exercise the care that circumstances justly demand. *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004). Neglect is not a term of fixed and measured meaning. Rather, "[i]t takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes. [Citations]." (Internal quotation marks omitted.) *A.P.*, 2012 IL 113875, ¶ 22. "[C]ases involving allegations of neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique facts." *Arthur H.*, 212 Ill.2d at 463. Pertinent to this appeal, a neglected minor includes any minor under 18 years of age "whose environment is injurious to his or her welfare." 705 ILCS 405/2–3(1)(b) (West 2018). The term "injurious environment" is an amorphous concept that cannot be defined with particularity but has been interpreted to include the breach of a parent's duty to ensure a safe nurturing shelter for her children. *A.P.*, 2012 IL 113875, ¶ 22.

¶ 25    Ordinarily, a trial court's ruling regarding neglect or abuse will not be disturbed unless it is against the manifest weight of the evidence. In re Arthur H., 212 Ill. 2d at 463-64. A finding is

against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *In re A.P.*, 2012 IL 113875, ¶ 17. The trial court is generally vested with this wide discretion because it has the best opportunity to observe the witnesses' testimony, assess credibility, and weigh the evidence. *In re E.S.*, 324 Ill. App. 3d 661, 667 (2001).

¶ 26    In this case, however, the trial court's finding that the minors were neglected was based upon a stipulated record and not based upon any observations of witnesses or witnesses' testimony. As such, the trial court was not in a better position than us to assess credibility or weigh the evidence. Therefore, since we are in the same position as the trial court, the trial court is not vested with wide discretion, and our review is *de novo*. *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 846 (2001) (Where the trial court heard no courtroom testimony and determined the issue of jurisdiction solely on the basis of documentary evidence, the trial court is not in a better position than the reviewing court to assess credibility or weigh the evidence and, therefore, the standard of review is de novo.); *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001) ("If the facts are uncontroverted and the issue is the trial court's application of the law to the facts, a court of review may determine the correctness of the ruling independently of the trial court's judgment.") (citing *In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 723-24 (1998)).

¶ 27    Applying these principles here, the stipulated evidence presented at the adjudication hearing established the following facts. The respondent and Marcus D. had a history of domestic violence, including an incident that was captured on film where the respondent engaged in a physical altercation with Marcus D. at the hospital the day prior to giving birth to the minors. During this altercation, the respondent struck Marcus D. The respondent and Marcus D. both admitted to having a history of drug abuse, with Marcus D. testing positive for amphetamines a

week after the minors were born. Lastly, the respondent has three other children in DCFS care after having been found to be neglected and abused. Given this record, we conclude that the stipulated evidence presented at the adjudication hearing supports a finding that the respondent breached her duty to ensure a safe nurturing shelter for the minors.

¶ 28    The respondent nevertheless argues that the evidence of neglect was insufficient, faulting the court for basing its findings on a single, angry outburst: her altercation with Marcus D. at the hospital. She also argues that the video of the altercation lacks context because there is no audio and it does not show the origins of the dispute. We find her argument unavailing. To begin, as noted above, it is simply not true that the circuit court based its decision on a single incident. In addition to stipulating to the hospital altercation, the respondent stipulated that she and the father had a history of domestic violence and drug abuse. She also stipulated that she has three older children in DCFS care that were found to be neglected and abused. Put simply, stipulated evidence belies the notion that the altercation at the hospital was an isolated event. As to the video, we do not find that it is lacking for context. The footage shows a physical altercation between the respondent and the father, with hospital staff intervening. If the respondent felt that there was further context that would have mitigated the impact of the footage, she could have presented that evidence during the adjudication hearing. She did not. Accordingly, we conclude that the State met its burden and proved the minors were neglected based on an injurious environment by a preponderance of the evidence.

¶ 29    The respondent next argues that the circuit court abused its discretion when it denied her counsel's request for a continuance on account of her absence at the disposition hearing.

¶ 30    A parent does not have an absolute right to a continuance in proceedings pursuant to the Act (705 ILCS 405/1–1 *et seq.* (West 2018)); serious delay in the adjudication of abuse, neglect or dependency can cause grave harm for the minors. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 36; 705 ILCS 405/2–14 (West 2018). "Continuances shall not be granted in child custody *** proceedings except for good cause shown and may be granted if the continuance is consistent with the health, safety and bet interests of the child." Ill. S. Ct. R. 901(c) (eff. July 1, 2018); see also 705 ILCS 405/2-14(c) (West 2018)) In proceedings pursuant to the Act, the determination whether to grant a continuance is left to the discretion of the trial court. *In re A.F.,* 2012 IL App (2d) 111079, ¶ 36. We will not overturn the trial court's decision absent manifest abuse or palpable injustice. *Id.*

¶ 31    After review, we conclude that the circuit court did not abuse its discretion when it denied the respondent's request for a continuance. As mentioned, the respondent does not have an absolute right to a continuance, and she bears the burden of showing "good cause." Here, the record establishes that the respondent's counsel was unable to contact her prior to the hearing and that she had not been in contact with Towner or her case worker for a month. There is evidence that the respondent had access to a phone because she allegedly was in contact with S.M. while staying in Las Vegas. As the court noted, the respondent could have contacted the agency or her attorney if she required any assistance attending the hearing. She also could have filed a brief within 30 days of the hearing that offered an explanation for her absence. She did not do so. Ultimately, the burden was on the respondent to show good cause for her absence and the need for a continuance. Significantly, she has not offered any explanation for her absence on that day, let alone offered good cause. Given the available evidence, we cannot say that the court's determination that a continuance was not in the best interest of the minors' well-being was an abuse of discretion.

¶ 32 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 33 Affirmed.