NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190828-U

NO. 4-19-0828

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 16, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.J., a Minor | ) | Appeal from |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
|      Petitioner-Appellee, | ) | No. 17JA13 |
|      v. | ) | |
| Michael L., | ) | Honorable |
|      Respondent-Appellant). | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court's fitness and best-interest findings were not against the manifest weight of the evidence.

¶ 2    On October 21, 2019, the trial court terminated the parental rights of respondent, Michael L., as to his son, A.J. (born March 19, 2017). Following a November 7, 2019, status hearing, the court appointed counsel for respondent on appeal and directed the circuit clerk to file a notice of appeal within five days. On November 21, 2019, the clerk filed a notice of appeal from the termination of respondent's parental rights. Respondent mother, Olivia J., is not a party to this appeal. On appeal, respondent argues the court's fitness and best-interest findings were against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 3                      I. BACKGROUND

¶ 4                      A. Initial Proceedings

¶ 5        In June 2017, the State filed an amended petition for adjudication of wardship alleging A.J. was neglected (705 ILCS 405/2-3(1)(b) (West 2016)), because his environment was injurious to his welfare due to respondent mother's mental health issues. After a shelter care hearing, the trial court granted the Department of Children and Family Services (DCFS) temporary custody of A.J.  In April 2017, the circuit clerk's office issued notice by publication to four putative fathers, including respondent, and any unknown fathers of A.J., in the News-Gazette, Inc., in Georgetown, Vermilion County, Illinois.

¶ 6        At a July 2017 adjudicatory hearing, respondent mother stipulated to the allegations of neglect in the State's petition and the trial court granted DCFS guardianship and custody of A.J.  In an August 2017 dispositional order, the trial court (1) found respondent mother unfit, (2) made A.J. a ward of the court, and (3) continued guardianship and custody of A.J. with DCFS.

¶ 7        In September 2019, the State filed a motion for termination of respondent mother's parental rights.  Subsequently, respondent mother surrendered her parental rights to A.J.

¶ 8        In February 2018, the trial court entered an order for deoxyribonucleic acid (DNA) testing of respondent to establish parentage of A.J.  Respondent first appeared in court at a November 2018 hearing.  After genetic testing showed respondent to be A.J.'s biological father, the court, in August 2019, entered a judgment establishing respondent to be the father of A.J.

¶ 9                        B. Respondent's Termination Proceedings

¶ 10       In September 2019, the State filed a motion for termination of respondent's parental rights.  The State alleged respondent was an unfit parent because he failed to

(1) maintain a reasonable degree of interest, concern, or responsibility as to A.J.'s welfare (750 ILCS 50/1(D)(b) (West 2018)), (2) make reasonable efforts to correct the conditions that were the basis for the removal of A.J. from respondent mother nine months after an adjudication of neglect, specifically December 6, 2018, to September 6, 2019 (750 ILCS 50/1(D)(m)(i) (West 2018)), and (3) make reasonable progress toward the return of A.J. within nine months after an adjudication of neglect, specifically December 6, 2018, to September 6, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)).

¶ 11                                    1. *Fitness Hearing*

¶ 12          On October 18, 2019, the trial court conducted a bifurcated hearing on the petition for termination of parental rights, first considering respondent's fitness. Respondent failed to attend the hearing but was represented by counsel. The parties presented the following relevant testimony.

¶ 13                                    a. Amanda Carpenter

¶ 14          Amanda Carpenter, a child welfare specialist for Lutheran Social Services of Illinois (LSSI), testified she served as the caseworker in respondent's case starting in November 2018. Carpenter testified that respondent knew he may be A.J.'s father prior to the establishment of paternity because he and respondent mother lived together while she was pregnant with A.J. Carpenter met with respondent once prior to the establishment of paternity where she discussed potential services with him and made appropriate referrals for services.

¶ 15          Carpenter testified that while respondent never completed an integrated assessment to accurately determine services, she recommended substance-abuse services and "domestic violence, parenting, anger management, complying with probation, psychological evaluation, and sex offender assessment[.]" Respondent never completed any services.

¶ 16		Respondent also failed to maintain regular contact with Carpenter.  Carpenter stated that respondent would "randomly show up at the office.  Then when we would schedule an appointment; and typically when we did that, he didn't come back."  Respondent called Carpenter a couple times, but she never received a good number to call him back.  Between November 2018 and the date of the fitness hearing, Carpenter testified she spoke with respondent between six and eight times.  Carpenter last spoke to respondent in September 2018.

¶ 17		Carpenter testified that respondent never engaged in visitation with A.J.  Carpenter stated, "He never really maintained contact to do that.  He never asked about the child.  When we met in March [of 2019], he called the child by another name."  When asked what name he called the child, Carpenter stated, "I don't recall, but it started with a D.  It was one of those other kids he said that he had a case with."

¶ 18		When asked on cross-examination if respondent ever asked about A.J., Carpenter testified that she briefly talked with respondent after the prior court hearing and that "[h]e did ask how [A.J.] was doing, but that's the only time he's ever asked me."

¶ 19				b. Trial Court's Findings

¶ 20		The trial court took judicial notice of the February 2018 DNA order, establishing when respondent became aware that he may be A.J.'s father.

¶ 21		Following the fitness hearing, the trial court found the State proved respondent unfit on all three grounds by clear and convincing evidence.

		"The [c]ourt notes that despite [respondent] coming into
		this case at a later date, he was involved prior to the designated 9-
		month period of time although the DNA testing was not yet back.
		Nonetheless, the case agency referred him to services to

- 4 -

substance—specifically substance abuse and parenting, neither of which did he engage in.

Subsequent to the DNA, he was referred for domestic violence or sent to Crosspoint for domestic violence assessment. He failed to meet—and he failed to follow up. He did not meet with the caseworker in order for the referrals to be completed for the psychological evaluation, despite the fact that the case agency had approval for that, nor for the sex offender evaluation. He has not visited with this child. He has not contacted this child. He has had virtually no contact with the caseworker."

¶ 22    On October 21, 2019, the court entered an order finding respondent unfit.

¶ 23                    2. *Best-Interest Hearing*

¶ 24                        a. Amanda Carpenter

¶ 25    Carpenter testified A.J. came into care when the case opened over two years ago. DCFS placed A.J. in a relative foster placement. At the time of the best-interest hearing, A.J. was two years old. When asked to describe the foster family, Carpenter stated, "They're wonderful with him. They have another little girl that lives in the home; and they're like best friends, kind of peas in a pod. So, I mean, they take very good care of him. They meet his needs. He's safe." Carpenter testified A.J. is bonded to the foster family and that the family is willing to provide permanency for A.J. through adoption. Carpenter testified that respondent never visited with A.J. and never sent cards, gifts, or letters to A.J.

¶ 26                        b. Trial Court's Findings

¶ 27	After hearing recommendations from counsel and considering the best-interest factors, the trial court found it was in A.J.'s best interest to terminate respondent's parental rights. The court emphasized that it considered the foster family's relationship with A.J. in contrast to respondent who never had contact with A.J. On October 21, 2019, the court entered a written order terminating respondent's parental rights.

¶ 28	c. Notice of Appeal

¶ 29	At a November 7, 2019, status hearing, respondent's attorney expressed respondent's wish to appeal. Respondent's attorney stated,

> "I believe that [respondent] does remain indigent. I would ask for the Court to enter a finding of indigency. I would ask the Court to direct the clerk to file an appeal in this case and to appoint Kimberly Blakely as the attorney on appeal.
>
> The order itself entered, I believe, on the 21st of October, so the entry of notice of appeal would have to occur before November 20th or probably 19th at this point."

¶ 30	The court found respondent indigent, appointed counsel to represent respondent on appeal, and directed the clerk "to prepare and file on behalf of [respondent] a notice of appeal within 5 days of today's date." The court entered a written order to the same effect. On November 21, 2019, the clerk filed a notice of appeal from the termination of respondent's parental rights.

¶ 31	This appeal followed.

¶ 32	II. ANALYSIS

¶ 33 On appeal, respondent argues the trial court erred in finding respondent to be an unfit parent and terminating his parental rights. Before we reach the merits of respondent's appeal, we must first address whether this court has jurisdiction to review the termination order where the clerk failed to file a timely notice of appeal from the termination order.

¶ 34                                 A. Notice of Appeal

¶ 35 "The timely filing of a notice of appeal is both jurisdictional and mandatory." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213, 902 N.E.2d 662, 664 (2009). Unless the appealing party has properly filed a notice of appeal, a reviewing court lacks jurisdiction over the appeal and must dismiss it. *People v. Smith*, 228 Ill. 2d 95, 104, 885 N.E.2d 1053, 1058 (2008). A notice of appeal must be filed within 30 days after entry of a final judgment. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). If a party fails to do so, it has up to 30 days following the expiration of the date for filing a notice of appeal to seek leave to file a late notice of appeal. Ill. S. Ct. R. 303(d) (eff. July 1, 2017).

¶ 36 Here, the trial court terminated respondent's parental rights on October 21, 2019. Following a November 7, 2019, status hearing, the court appointed counsel for respondent on appeal and directed the circuit clerk to file a notice of appeal within five days. The clerk filed a notice of appeal on November 21, 2019, a day after the deadline to file a notice of appeal challenging the order terminating respondent's parental rights. Based on the circuit clerk's failure to file a timely notice of appeal or seek leave to file a late notice of appeal, this court lacks jurisdiction over this appeal.

¶ 37 However, under Illinois Supreme Court Rule 606(a) (eff. July 1, 2017), we find that given the trial court's order to the clerk to file a notice of appeal on behalf of respondent, respondent should not be charged with responsibility for the delay in filing the notice in this

proceeding. See *In re M.S.*, 210 Ill. App. 3d 1085, 1092, 569 N.E.2d 1282, 1286 (1991). Illinois Supreme Court Rule 606(a) (eff. July 1, 2017), states that if a criminal defendant requests "in open court at the time he is advised of his right to appeal or subsequently in writing, the clerk of the trial court shall prepare, sign, and file forthwith a notice of appeal." Ill. S. Ct. R. 606(a) (eff. July 1, 2017). While the termination of parental rights is a civil matter, article VI of the Illinois Supreme Court rules pertains to appeals in criminal cases, post-conviction cases, and juvenile court proceedings. *M.S.*, 210 Ill. App. 3d at 1092. Because respondent is not responsible for the late notice of appeal, we will not dismiss this appeal for lack of jurisdiction. Therefore, we turn to the merits of the appeal.

¶ 38                                    B. Termination of Parental Rights

¶ 39                                         1. *Fitness Finding*

¶ 40         In a proceeding to terminate parental rights, the State has the burden of proving parental unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004). In making a determination, the court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)). Evidence of unfitness based on any ground enumerated in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2018)) is enough to support a finding of unfitness. *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105, 1113 (2002). A reviewing court will not overturn the trial court's finding of unfitness unless it is against the manifest weight of the evidence. *Jordan V.*, 347 Ill. App. 3d at 1067. The trial court's decision is given great deference due to "its superior opportunity to observe the witnesses and evaluate their credibility." *Id.*

¶ 41          Section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)) permits a finding of neglect based on failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. "In evaluating an allegation pursuant to section 1(D)(b), a trial court must focus on a parent's reasonable efforts, rather than success, in communicating, visiting, or otherwise showing interest in the child." *In re A.F.*, 2012 IL App (2d) 111079, ¶ 41, 969 N.E.2d 877 (citing *In re Konstantinos H.*, 387 Ill. App. 3d 192, 204, 899 N.E.2d 549, 559 (2008)). "Noncompliance with an imposed service plan or irregular visitation with the minor is sufficient for an unfitness finding." *Id.*

¶ 42          Here, the trial court found respondent to be an unfit parent because he failed to maintain a reasonable degree of interest, concern, or responsibility as to A.J.'s welfare. Respondent not only failed to complete an integrated assessment of services, but also failed to pursue, let alone complete, any of the recommended services, and he failed to maintain regular contact with the caseworker. Respondent also never engaged in visitation with A.J. Carpenter testified that respondent only asked about A.J. once the entire time she worked on the case.

¶ 43          In light of the foregoing, the trial court's finding was not contrary to the manifest weight of the evidence. Because we have upheld the trial court's finding as to one ground of unfitness, we need not review any other ground. See *In re D.H.*, 323 Ill. App. 3d 1, 9, 751 N.E.2d 54, 61 (2001).

¶ 44                              2. *Best-Interest Finding*

¶ 45          Once the trial court determines a parent to be unfit, the next stage is to determine whether it is in the best interests of the minor to terminate parental rights. *In re Jaron Z.*, 348 Ill. App. 3d 239, 261, 810 N.E.2d 108, 126 (2004). The State must prove by a preponderance of the evidence that termination is in the best interest of the minor. *Id.* The trial court's finding will

not be overturned unless it is against the manifest weight of the evidence. *Id.* at 261-62. A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate the court should have reached the opposite result. *In re Jay H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 290-91 (2009). Ultimately, the trial court is in the best position to determine the credibility of the witnesses. *In re K.B.*, 314 Ill. App. 3d 739, 748, 732 N.E.2d 1198, 1206 (2000).

¶ 46 At the best-interest stage of termination proceedings, " 'the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life.' " *In re T.A.*, 359 Ill. App. 3d 953, 959, 835 N.E.2d 908, 912 (2005) (quoting *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004)). The trial court takes into consideration the best-interest factors in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2018)).

¶ 47 Here, in looking at the evidence in conjunction with the statutory factors, the trial court found it was in A.J.'s best interest to terminate respondent's parental rights. The court emphasized it considered the foster family's relationship with A.J. in contrast to respondent who never had contact with A.J. At the time of the best-interest hearing, A.J. was two years old and had been with the foster family for most of his life. Carpenter testified the foster family took very good care of A.J. and desired to provide permanency for A.J. through adoption. Respondent never visited A.J. or sent him cards, gifts, or letters. Respondent also failed to engage in any services or otherwise demonstrate he could provide stability and permanence for A.J. in the near future.

¶ 48 Given the foregoing, the trial court's finding terminating respondent's parental rights was not contrary to the manifest weight of the evidence.

¶ 49                                 III. CONCLUSION

¶ 50          For the reasons stated, we affirm the trial court's judgment.

¶ 51          Affirmed.