NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 210114-U

NO. 4-21-0114

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 20, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* B.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
|       Petitioner-Appellee, | ) | No. 18JA133 |
|       v. | ) | |
| Helen G., | ) | Honorable |
|       Respondent-Appellant). | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minor's best interest to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 2    Respondent mother, Helen G., appeals from the trial court's judgment terminating her parental rights to her son, B.G. (born February 6, 2018). On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights are against the manifest weight of the evidence. We affirm.

¶ 3                    I. BACKGROUND

¶ 4            A. Amended Petition to Terminate Parental Rights

¶ 5    In January 2020, the State filed a petition to terminate respondent's parental rights, which it later amended. In its amended petition, the State alleged respondent was an unfit parent as she failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's

welfare (750 ILCS 50/1(D)(b) (West 2018)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint the Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 6                                    B. Fitness Hearing

¶ 7          In December 2020, the trial court held a fitness hearing. The State presented testimony from a caseworker who had been assigned to the minor's case since January 2019 as well as two DCFS service plans. Respondent presented testimony from a friend whom she had lived with from about August to December 2019. The following is gleaned from the evidence presented.

¶ 8          Immediately following the minor's February 2018 birth, respondent had a positive drug screen for cocaine. In March 2019, respondent was arrested for driving under the influence, an offense for which she was later convicted and sentenced to a term of probation.

¶ 9          As part of the services in this case, it was recommended respondent (1) attend random drug screens to ensure she was living a drug-free lifestyle, (2) complete a substance abuse treatment program, (3) obtain appropriate housing, and (4) obtain employment. The recommendations were discussed with respondent and incorporated into service plans, which were given to respondent.

¶ 10          Respondent did not consistently attend the drug screens and tested positive for drugs on some of the screens that she attended. In September 2019, respondent had a positive screen for cocaine. In October 2019, respondent had a positive screen for alcohol. In November 2019, respondent had a positive screen for alcohol and tetrahydrocannabinol (THC). In February and March 2020, respondent had positive screens for alcohol. Between November 2019 and March

2020, respondent had multiple positive screens for "methamphetamine/amphetamines"; however, the caseworker acknowledged those screens could have been a result of respondent's prescribed Adderall medication.

¶ 11    Respondent did not complete a substance abuse treatment program. In March 2019, respondent was referred for outpatient treatment services at a specific agency. Respondent did not attend to those services. In August 2019, respondent asked the caseworker for a referral for a different agency, which the caseworker provided. Respondent began outpatient services at that agency but was then discharged due to absences. On multiple occasions thereafter, respondent reengaged in outpatient services but was then discharged due to absences.

¶ 12    With respect to housing and employment, respondent had resided with friends at various locations. The caseworker had not evaluated respondent's housing because her continued substance abuse prevented the minor from returning home. Respondent obtained employment in September 2019.

¶ 13    The caseworker provided testimony about respondent's cooperation with her as well as visitations. As to respondent's cooperation with the caseworker, respondent initially maintained contact with the caseworker. That contact, however, became inconsistent in March 2020. The caseworker did not hear from respondent between April and June 2020. In July 2020, respondent contacted the caseworker and informed her that her phone had been turned off. Respondent's contact after that was "very, very sporadic." As to visitations, respondent's last in-person visit occurred in early 2020. Prior to that time, respondent had attended weekly visitations. Visitations were always supervised because respondent had not made progress with her substance abuse issues.

¶ 14 Based on this information, the trial court found respondent was an unfit parent as alleged in the State's petition to terminate parental rights.

¶ 20 C. Best-Interest Hearing

¶ 21 In February 2021, the trial court held a best-interest hearing. The State presented testimony from the caseworker who had been assigned to the minor's case since January 2019. Respondent testified on her own behalf. The following is gleaned from the testimony presented.

¶ 22 The minor, who was three years old at the time of the best-interest hearing, had been placed with fictive kin since he was nine months old. He was bonded to his foster family, which included two adult parents, a four-year-old foster brother, and an older foster sister. The foster family provided the minor with a safe and loving home and made sure he was given proper care. The family was willing to provide the minor with permanency through adoption.

¶ 23 The minor's last in-person visit with respondent occurred in early 2020. The minor later had video visits with respondent. The caseworker testified the lack of in-person visitation was a result of both pandemic restrictions and respondent's failure to maintain contact with her. Respondent suggested the lack of in-person visitation was a result of the caseworker not calling her back to set up the visits. The caseworker was unaware of respondent sending the minor any cards, gifts, or letters. Respondent testified she provided the minor with money and a coat.

¶ 24 Respondent expressed a desire to continue the relationship with her son and have him returned to her care. The caseworker believed it would be in the minor's best interest to stay with his foster family.

¶ 25 Based on this information, the trial court, after considering the statutory best-interest factors, found it would be in the minor's best interest to terminate respondent's

parental rights. The court entered a written order terminating respondent's parental rights.

¶ 26          This appeal followed.

¶ 27                              II. ANALYSIS

¶ 28          On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights are against the manifest weight of the evidence. The State disagrees.

¶ 29                           A. Unfitness Finding

¶ 30          Respondent asserts the trial court's finding she was an unfit parent is against the manifest weight of the evidence.

¶ 31          In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 32          The trial court found respondent was an unfit parent as defined in section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2018)). Section 1(D)(b) states a parent will be considered an "unfit person" if he or she fails "to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." In determining whether a parent showed a reasonable degree of interest, concern, or responsibility as to a child's welfare, the court must examine "the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278, 562 N.E.2d 174, 185 (1990). "Noncompliance with an imposed service plan *** is sufficient" for a finding a parent is unfit for

failing to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare. *In re A.F.*, 2012 IL App (2d) 111079, ¶ 41, 969 N.E.2d 877.

¶ 33 The evidence at the fitness hearing demonstrated the primary concern in this case was respondent's substance abuse—she tested positive for cocaine immediately following the minor's birth and was later arrested and convicted of driving under the influence. To address the substance abuse, it was recommended respondent complete a substance abuse treatment program and attend random drug screens to ensure she was living a drug-free lifestyle. Respondent did not complete a substance abuse treatment program, did not consistently attend the drug screens, and tested positive for cocaine, THC, and alcohol on some of the drug screens she attended. Respondent's failure to adequately address her substance abuse prevented the minor from any possibility of returning home. Given the evidence presented, we find the trial court's unfitness finding based on respondent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare is not against the manifest weight of the evidence.

¶ 34                                    B. Best-Interest Finding

¶ 35 Respondent asserts the trial court's finding it was in the minor's best interest to terminate her parental rights is against the manifest weight of the evidence.

¶ 36 In a proceeding to terminate parental rights, the State must prove termination is in the child's best interests by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367, 818 N.E.2d 1214, 1228 (2004). When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2018).

¶ 37 This court will not reverse a trial court's finding termination of parental rights is in

a child's best interests unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33, 147 N.E.3d 953. Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 38 The testimony at the best-interest hearing demonstrated the minor was bonded to his foster family, whom he had resided with for most of his life. The family provided the minor with a safe and loving home and made sure he was given proper care. The family also was willing to provide the minor with permanency through adoption. Conversely, the minor had not had an in-person visit with respondent in almost a year. The caseworker testified the lack of in-person visitations was, in part, because of respondent's failure to maintain contact with her. Given the testimony presented, we find the trial court's finding it was in the minor's best interest to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 39 C. Extension of Time to Address the Substance Abuse Issues

¶ 40 As a final matter, respondent on appeal repeatedly asserts she should have been given more time to address her substance abuse issues in order to reunite with the minor. Respondent did not, however, seek such relief before the trial court. Further, we find nothing in the record to suggest an extension of time would have changed the result in this case.

¶ 41 III. CONCLUSION

¶ 42 We affirm the trial court's judgment.

¶ 43 Affirmed.